On the twenty-eighth day of August, 1925, the complainants entered into an agreement with the defendant Isador Goldman, wherein they agreed to sell and convey to him certain premises in Cape May City for the sum of $150,000, which sum the said Goldman agreed to pay:
"The sum of $25,000 cash as follows: Five thousand dollars on the date thereof; five thousand dollars on December 1st, 1925, and *Page 560 
fifteen thousand dollars on January 4th, 1926, at the time of settlement, and the balance of $125,000 to remain on mortgage for five years with interest at six per cent. per annum, payable semi-annually; $5,000 to be paid in cash each and every year for five years, until said mortgage matures.
"The premises to be conveyed clear of encumbrance. The title to be good and marketable and free of all judgments; taxes and water rents to be apportioned to date of settlement, and possession to be given on day of settlement by transfer of existing leases. The Focer-Mecray lease to be for two years, at rental of $2,500 the first year and $3,000 for the second."
By mutual agreement the time of settlement was extended to February 6th, 1926. On February 6th, 1926, the parties met for the purpose of making settlement. It developed that the complainants were not in position to make settlement because — (1) the inheritance tax due the State of New Jersey from the estate of one Focer, who at his death held title to an undivided one-half part of the premises in question, had not been paid; (2) that a mortgage of $25,000 of record had not been canceled, and (3) the deed from the heirs of said Focer to Mecray had not been delivered or recorded. It was testified that no question was raised at any time that the Focer heirs still had title, and Mr. Eldredge testified that on said February 6th, 1926, he was in possession of a deed duly executed by them.
The mortgage of $125,000 had not been executed by Goldman and wife, although it was claimed that the same could be executed by one Perlstein, by authority of an alleged power of attorney. This the attorney of Mecray properly refused to accept.
Apparently, as a result of considerable negotiation, the parties entered into an agreement as expressed by the following:
"Merchants National Bank, Cape May, N.J.
Gentlemen:
You are handed herewith to be held in escrow the following:
 Check for $6,374.09. Deed from Jeremiah Mecray et ux., to Isadore Goldman, covering Focer and Mecray Building, Cape May, New Jersey.
At final settlement for the above described property the funds so held are to be distributed as follows:
$4,500 is to be paid to Sol Needles as commissions. *Page 561 
$1,874.09 is to be paid to Jeremiah Mecray as purchase money.
There will be forwarded to the said bank a mortgage in the sum of $125,000, executed by the above-named Goldman to Mecray. This mortgage is to be delivered to the Camden Safe Deposit and Trust Company as collateral for a loan to be made by them upon their agreement to cancel a $25,000 mortgage on the said premises now held by them. Such agreement having been made by them the above-named funds are to be distributed and the deed for the premises delivered to Lewis T. Stevens.
The above arrangement is to be carried out with the approval of Lewis T. Stevens, attorney for purchaser and Samuel F. Eldredge, attorney for seller."
Mecray turned over to Perlstein or Stevens, each of whom were representing Goldman, the then existing leases, he, Mecray, continuing to collect the rents accruing thereunder, and keeping the amount so collected in a "Special" bank account, where the same remains, excepting for the payment of taxes and water rents, which were paid therefrom.
It will be noted that no deposit was made by Mecray for the rent accruing for the part of the premises occupied by him by virtue of the agreement.
No time was specified in the letter to the bank (called the escrow agreement) for delivery of the deed, or the distribution of the money. There is considerable testimony that it was stated that it would take about a week or ten days from that date to have the inheritance tax matter adjusted and paid, and the $25,000 mortgage canceled.
On the 17th day of February, 1926, the bank received the mortgage of $125,000 duly executed by Goldman and wife to Mecray as called for by the agreement. The mortgage was dated February 4th, 1926, and duly acknowledged February 16th, 1926, and is the one referred to in the agreement to be delivered to the Camden Safe Deposit and Trust Company, as collateral for a loan to be made by them upon their agreement to cancel a $25,000 mortgage on the said premises.
No action was taken by the bank toward the delivery of this mortgage and the cancellation of the one held by the Camden Safe Deposit and Trust Company, for the reason as stated by the bank: "We didn't do anything with the mortgage by reason of the fact that the payment of the inheritance tax was, as I understood it, the thing that was causing the *Page 562 
delay, and when that was paid, then the question of the delivery of the mortgage was a matter of only twenty-four hours, so that we did nothing with the mortgage."
No other action was taken by the bank prior to the 25th day of May, when Senator Stevens served upon it the following notice:
"To Merchants National Bank of Cape May, and Samuel F. Eldredge, Esq., attorney for Jeremiah E. Mecray:
You are hereby requested to pay to me, and I hereby demand of you the sum of six thousand three hundred and seventy-four dollars and nine cents, deposited with you, The Merchants National Bank of Cape May, on February 6th, 1926, which sum was to be paid to the said Jeremiah E. Mecray upon his making marketable title to and delivery of a deed for the Post-Office Building, Cape May, New Jersey, or suit at law will be entered for the return of said sum.
 Dated: May 25th, 1926. ISADOR GOLDMAN By LEWIS T. STEVENS, Attorney."
On March 23d, Stevens served upon Mecray, by delivering the same to him, the following notice:
"MARCH 22d 1926. To Jeremiah E. Mecray, Cape May, N.J.
Please take notice:
That I demand delivery of the post office building, Cape May, New Jersey, into my possession within five days from date, together with deed and other papers belonging to the ownership of the same, or else a return of my mortgage and bond, and a return of all moneys paid on the purchase of the same.
 Yours very truly, ISADORE GOLDMAN, By LEWIS T. STEVENS, His Attorney."
On April 17th, 1926, Stevens served upon Mecray, by handing the same to him, the following demand:
"APRIL 17, 1926. To Jeremiah E. Mecray, Cape May, N.J.
Dear Sir:
Demand is hereby made upon you to return us the amounts of money paid on account of the purchase of the Post Office Building, Cape May, New Jersey, to wit: Twenty-five thousand dollars, together *Page 563 
with interest on the whole amount from the dates on which each payment was made, which do not in any way include any damages which might accrue to us.
 Yours very truly, LEWIS T. STEVENS, Attorney for Isadore Goldman."
On May 27th, 1926, said Isador Goldman commenced a suit against the complainant Jeremiah E. Mecray, in the Cape May county circuit court, to recover the three several payments of $5,000 each made by said Goldman to said Mecray on August 28th, 1925, December 1st, 1925, and January 2d 1926, respectively, on the ground that the defendant in that suit, who is one of the complainants herein, has failed to perform said contract,Exhibit A, and said escrow agreement, Exhibit B.
On June 3d 1926, demand was made by the complainant of the bank for the distribution of the money and the delivery of the bond and mortgage, and a tender was made of the moneys so collected for rents. Proof was also presented that the liens in question had been canceled and that the title was marketable. The bank refused to comply with his demand, having theretofore been notified not to carry out the terms of the agreement.
A resume of parts of the testimony may be of advantage.
On or about May 15th, 1926, William A. Gray, an attorney-at-law of Philadelphia, met Mr. Mecray in Stevens' office and stated to him that he represented the purchaser, and called his attention to the fact that the above notice had been served upon him (Mecray) on March 22d, and that the money was demanded on April 17th, and that he (Gray) was in Cape May to take up with Mr. Stevens the question of instituting suit, and if "he didn't pay us back the money we were going to institute proceedings immediately." Mr. Eldredge was present during a part of this interview.
Mecray replied: "If I do [pay the money back] who has got to pay the commission and costs in this case?"
Mr. Gray testified that Mecray did not deny that he received the demand on the 23d day of March.
Mr. Mecray's testimony was: "There wasn't any set time, except that the agreement said that both lawyers must be *Page 564 
satisfied, Mr. Eldredge and Mr. Stevens, and just as soon as we got the papers back from Trenton. As far as the mortgage was concerned, I had been to the Camden Safe Deposit and Trust Company and asked for $25,000, which they granted, and I got it within twenty-four hours after they got the inheritance tax. The escrow agreement was an extension and it was the defendant's suggestion."
He also testified that he went to Trenton with Mr. Eldredge on May 18th, and in response to the question: "Wasn't it [why he went to Trenton] because on the Saturday before you had a conference with Mr. Gray in Senator Stevens' office, and Mr. Gray had told you that they were going to bring a suit against you for the return of this $15,000," he said, "I don't know as that is just exactly the reason we went there, but it might have been."
Lissman testified that Mecray said: "The whole thing would be a matter of a week to ten days."
Schaffer testified that Mecray said: "We will have everything fixed up in about a week," and also affirmed the delivery of the demand by Stevens in April.
Stevens testified that Mecray said: "The matter ought to be all cleared up within a week." On March 23d, Stevens deliveredExhibit D-1 to Mecray personally. On April 17th, 1926, Stevens handed Mecray Exhibit D-2.
On May 15th, 1926, Gray said: "We are down here to have this matter settled up. If it isn't, we shall immediately bring a suit for the recovery of it."
Mecray or Eldredge, or no one else for Mecray, ever tendered, prior to the time of the commencement of the suit, an unencumbered title to the property in question.
Stevens testified that at the time of the escrow agreement Mecray stated: "That this matter ought to be settled in a week."
Perlstein testified that Mecray said: "That the encumbrances that were on the property would be cleared up within a week," that Mecray refused an extension of thirty days; that he would clear the matter up within a week to ten days and for us to put the money in escrow at the Merchants National Bank." *Page 565 
Mr. Samuel F. Eldredge testified that the letter dated May 13th, 1926, was the first letter he could find on his files concerning the Focer inheritance tax. There was an affidavit of March, 1926.
The $25,000 mortgage referred to was canceled on the 24th day of May, 1926. The inheritance tax was paid on May 18th, 1926, and a release obtained; because of some error another release, dated May 28th, 1926, was obtained, and recorded on June 3d 1926.
Mr. Eldredge testified that the purpose of the escrow agreement "was to extend the time for the performance of the agreement until such time as the mortgage could be paid and the inheritance tax could be paid. Apparently no attempt beyond writing some letters and filing an affidavit was made by Mr. Eldredge who represented both Mr. Mecray and the Focer heirs, between February 6th, 1926, and May 18th, 1926, to remove the inheritance tax exception, although he knew Goldman was insisting on clearing up the matter and that Stevens had asked about it. On May 18th, 1926, as above stated, he went to Trenton, paid the tax and obtained the release."
The condition of a deposit in escrow may be in writing or in parol, or partly in writing and partly in parol, and the rule that a written contract between the parties will be deemed to contain the entire agreement is inapplicable. Fred v. Fred,50 Atl. Rep. 776.
The general rules as to escrow are well settled "upon the deposit in escrow a contract between the parties as to the delivery of the writing by the depositary is created, which neither party can alone rescind (11 Am. Eng. Encycl. L. (2ded.) 344), and the depositary, as the agent of both parties, is bound to deliver on the performance of the conditions. Ibid.345." Fred v. Fred, supra (at p. 778).
We have ascertained that time was not of the essence of the contract in the case at bar, again using the language of Vice-Chancellor Emery in the same case of Fred v. Fred, supra
(at p. 780): "Time not being of the essence of the contract by the agreement itself, the defendant Fred or Lewis had it in their power to notify complainant to complete the *Page 566 
contract within a reasonable time, and thus make the time essential." This was done in the present case.
The prayer of the bill was for a specific performance of the agreement, and for an order restraining the defendant from further proceeding in the suit at law.
The counter-claim prays for a decree declaring the contract between the parties to be declared to be of no further force and effect, and that the Merchants National Bank of Cape May be restrained from paying over the money deposited with it.
I will advise a decree dismissing the bill and for relief of the defendant. The form of the decree to be fixed upon notice.