333 A.2d 728
### In re ESTATE of Frank H. ELLIS, III, Deceased.
### Appeal of Henry J. PRESTON, Executor.

Supreme Court of Pennsylvania.

Argued Dec. 2, 1974.

Decided March 18, 1975.

James N. Robertson, Robertson & Bullen, Media, William H. Bender, Bender & Bender, Downingtown, for appellant.

Edward M. David, Saul, Ewing, Remick & Saul, Philadelphia, Samuel Evans Ewing, 3rd, Ewing & Ewing, West Chester, for appellee, Church Farm School.

J. Peter Williams, Drinker, Biddle & Reath, Philadelphia, for appellee, New Bolton Center of University of Pa.

Charles F. Mayer, Media, for appellee, one-third of heirs of Adele Ellis.

James W. Sutton, Jr., Asst. Atty. Gen., for appellee, Com. of Pa.

Before JONES, C. J., and EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

The court below, on petition of the appellees, various beneficiaries of the Estate of Frank H. Ellis, III, surcharged appellant, Henry J. Preston, for breach of his fiduciary responsibilities while serving as executor for the estate. The appellant filed exceptions to the adjudication and those exceptions were denied. From that denial this appeal resulted.[1] We affirm.

The executor-appellant undertook to dispose of certain realty holdings of the estate. He planned to accomplish this liquidation by public auction. Before he had entered into a formal agreement with the auctioneer, a realtor approached the appellant and intimated that he had a purchaser available. Appellant informed the realtor that he fully intended to conclude an agreement for sale by auction unless, prior to that agreement, the realtor could

---

[1]. Jurisdiction is based on Section 202(3) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.202(3).

produce a purchaser willing to buy the entire tract at a specified price per acre. After this meeting, the realtor forwarded a registered letter to the appellant informing him that he, the realtor, had shown the property to the prospective purchaser, who remained interested.[2]

The appellant did not respond to this letter and the property was sold at auction. The purchaser of the major portion of the property was the General Services Administration of Pennsylvania, presumably on behalf of the Bureau of Prisons, which had been the prospective purchaser mentioned by the realtor.[3] One year after the sale of the property and the payment of commissions to the auctioneer by the estate, the realtor was awarded, in an assumpsit action, a commission on the sale of the same property.[4] Counsel for the estate filed an appeal but later withdrew it with prejudice, and the estate satisfied the judgment. The appellant submitted his final account and appellees objected. The action for surcharge followed, and the appellant was held individually liable for the second payment of commissions on the single tract of realty.

The question before us in this appeal is whether the appellant has violated his obligation of prudent due care so as to make him personally liable for the payment of the second commission. Appellant relies on three grounds for reversal of the lower court. First, he alleges that the objectors presented no evidence. Second, he asserts that no reasonably prudent executor could have foreseen that the facts here could have been deemed to have created a contractual relationship. Finally, he maintains that even if a contractual relationship could

2. The evidence is unclear whether this notification occurred before or after the agreement to sell through the auctioneer had been executed.

3. The realtor, in fact, did the bidding for the General Services Administration.

4. *Gabriel v. Preston*, 19 Chester Co.Rep. 193 (Pa.1971).

reasonably be assumed to have existed, the appellant's failure to perceive that relationship was not "supine negligence" sufficient to impose surcharge. We find each of these arguments unpersuasive.

■■ Normally, those who seek to surcharge a fiduciary have the burden of establishing his wrongful conduct. *Lohm Estate*, 440 Pa. 268, 274, 269 A.2d 451, 454 (1970); *Maurice Estate*, 433 Pa. 103, 107, 249 A.2d 334, 336 (1969). However, where a patent error has occurred, the burden of going forward with evidence demonstrating prudent management is on the executor. *Lohm Estate*, 440 Pa. at 274, 269 A.2d at 454; *Maurice Estate*, 433 Pa. at 108, 249 A.2d at 336. Here, the fact of dual payment for realty commissions was admitted by all parties. As the lower court noted in its opinion: "Such a [double] payment is not a common or usual transaction in the normal course of business. The details as to how it came about ought to be put forth and scrutinized." It is the duplication of commissions as opposed to the splitting of a commission which is suspect. *Cf.* Section 3360 of the Probate, Estates and Fiduciaries Code of 1972, 20 Pa. S. § 3360. Once the payment of *two full commissions* was conceded by the executor he had the burden of going forward with evidence establishing prudence, skill and due care. Thus, appellant's first basis for reversal is without merit.

■ We also reject appellant's second argument which suggests that no surcharge was permissible since no reasonable man could have assumed that a contract existed. The existence of the contractual relationship between the appellant and the realtor [5] is foreclosed from

5. It is clear that the existence of a contract where conflicting evidence is presented is an issue of fact for the jury. *Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (E.D.Pa.1973) (applying Pennsylvania law), and *Field v. Golden Triangle Broadcasting Co.*, 451 Pa. 410, 305 A.2d 689 (1973). An argument which asserts that no reasonable man could have concluded a

*our consideration.* The withdrawal of the appeal of the
award to the realtor finally determined the existence of a
contract between the parties to that action. The appel-
lant cannot now plead the absence of a contract. Under
criteria announced in this opinion, he is bound by the
principles of collateral estoppel.

Traditionally, collateral estoppel can only be invoked
where there is a mutuality of estoppel, that is, both par-
ties must be bound by the previous adjudication before
either party can claim the benefits of that adjudication.
Restatement of Judgments, § 93(b) (1942). That mu-
tuality is absent here and, under a strict adherence to
Restatement principles, the appellant could re-litigate the
existence of a contractual relationship between himself
and the real estate agent. However, Pennsylvania has
never strictly adhered to the requirements of mutuality.
*See Posternack v. American Casualty Co.,* 421 Pa. 21, 25,
218 A.2d 350, 352 (1966), and cases cited thereat. Al-
though mutuality has been the general rule, *Posternack*
indicates that exceptions have been allowed to prevent
injustice.

It seems unwise, though, to retain a rule whose poten-
tial for unfairness necessitates an *ad hoc* development of
numerous exceptions. The rule sacrifices all considera-
tion of judicial economy to satisfy a judicial desire for
symmetry: unless both parties are bound by the former
action, neither can plead it in the latter one. But Judge
Hastie in *Bruszewski v. United States,* 181 F.2d 419, 421
(3d Cir. 1950), recognized that "no unfairness results
. . . from estoppel which is not mutual. . . .
[T]he achievement of substantial justice rather than
symmetry is the measure of the fairness of the rules of
*res judicata."*

contract existed essentially challenges the sufficiency of the evi-
dence to substantiate a contract as a matter of law. Thus, such
an argument challenges the very existence of the contract be-
tween the realtor and appellant.

The assault upon the requirement of mutuality began with Justice (later Chief Justice) Traynor's opinion in *Bernhard v. Bank of America National Trust and Savings Association,* 19 Cal.2d 807, 122 P.2d 892 (1942). That case held that a plea of collateral estoppel was valid if (1) the issue decided in the prior adjudication was identical with the one presented in the latter action, (2) there was a final judgment on the merits, and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. Using the *Bernhard* decision as a common basis, numerous jurisdictions have in varying degrees abandoned the requirement of mutuality.[6]

Logic compels us to accept California's position: a plea of collateral estoppel is good where the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.[7] Here, the appellant has had a full opportunity to litigate the issue of the contractual relationship existing between him and the realtor.[8] Therefore, the re-liti-

6. *See, e. g., Provident Tradesmens Bank and Trust Co. v. Lumbermens Mutual Casualty Co.,* 411 F.2d 88 (3d Cir. 1969); *Foltz v. Pullman, Inc.,* 319 A.2d 38 (Del.Super.1974); *Greenwell v. American Guaranty Corp.,* 262 Md. 102, 277 A.2d 70 (1971); *Continental Can Co. v. Hudson Foam Latex Products, Inc.,* 123 N.J.Super. 364, 303 A.2d 97 (Law Div.1973), reversed on other grounds, 129 N.J. Super. 426, 324 A.2d 60 (Appellate Div.1974); *B. R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).

7. Although the question is not before us today, an exception to this general rule might be necessary to accomplish substantial justice where successive litigation of identical issues by several plaintiffs is likely. In such cases, if mutuality were completely abandoned a common defendant might successfully defend several actions, lose one and be subjected to a plea of collateral estoppel for the remaining cases. *See* B. Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stanford L.Rev. 281, 308 et seq. (1957) and cases and examples there cited.

8. What constitutes a full and fair opportunity to litigate an issue can itself be a very complicated determination. *See* Currie, *supra* note 7, and H. Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457, 1468–71 (1968). However, it seems reasonable that a defense has been full and fair where the only issue litigated in the prior action is the issue in question

gation of the issue of contractual relationship is barred by collateral estoppel.

This result comports with the goal of substantial justice which, *Bruszewski, supra,* correctly noted, should be the basis for the principles of res judicata and of its corollary, collateral estoppel. If the appellant were allowed to demonstrate the absence of a contract in the surcharge action, a contradictory result would occur. The estate would have suffered an obviously unnecessary expense of a type normally recoverable from the executor. Yet the beneficiaries could not successfully surcharge the executor for the loss. Thus, the estate would lose because there was a contract and the beneficiaries because there was not. Clearly, collateral estoppel must be a permissible plea to avoid such a contradiction.

The final argument of appellant is that even assuming that the finding of a contractual relationship was reasonable, his failure to realize this did not amount to "supine negligence," which he asserts is the standard of care applicable to the situation. It is hornbook law that "[a fiduciary] is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in the management of his own estate; and if he negligently causes a loss to an estate he may properly be surcharged for the amount of such loss." *Denlinger Estate,* 449 Pa. 393, 396, 297 A.2d 478, 480 (1972).

in the subsequent litigation, where the former verdict is not the result of compromise and where the recovery represents the entire amount in question.

Furthermore, this is not the type of situation which will result in successive suits by several plaintiffs and, therefore, not within the possible exception mentioned in note 7, *supra.* This would be true even if the beneficiaries chose to sue the appellant seriatim rather than as a unit. Here, the appellant's liability to the beneficiaries as a group is fixed by the determination of his contractual indebtedness to the realtor. It differs from the multiple suits excluded from the general rule where monetary liability is limited only by the damage incurred by all possible plaintiffs. Here, liability is fixed whether there be one beneficiary or one thousand.

It is also clear, however, that mere errors in judgment concerning discretionary acts on the part of the fiduciary will not subject him to surcharge. This Court has held where there is an "honest exercise of discretionary power" a fiduciary will not be liable unless "supine negligence or wilful default" is present. *Lerch Estate*, 399 Pa. 59, 64, 159 A.2d 506, 509 (1960); *Mereto Estate*, 373 Pa. 466, 468, 92 A.2d 115, 116 (1953); *Stirling's Estate*, 342 Pa. 497, 504, 21 A.2d 72 (1941). No executor has the discretion to inadvertently enter into a second realty contract and unintentionally incur the expense of a double commission. Hence, the executor must be held to the usual standard of prudent due care. When this standard is applied to the facts presented, we must conclude that the executor acted imprudently. The executor did not cautiously engage the realtor, but conducted himself in such a manner that a jury concluded a contract existed. No man of *ordinary* prudence carelessly enters into two contracts for the sale of valuable property. The conclusion of the second contract, when unwittingly created, subjected the estate to an unnecessary expense for which the executor was properly surcharged.

Decree affirmed. Costs on appellant.

ROBERTS, J., did not participate in the consideration or decision of this case.

MANDERINO, J., concurs in the result.