409 A.2d 321

**In re ESTATE OF R. L. L., a minor.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1979.

Decided Dec. 21, 1979.

Sanford S. Finder, Washington, for appellant.

John J. Hickton, John J. Dean, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN, FLAHERTY, JJ.

## OPINION

NIX, Justice.

This matter comes to this Court on appeal from an award of guardianship of the person in favor of the paternal grandparents, appellees, by the Washington County Court of Common Pleas, Orphans' Division.

K. L., appellant, and G. L. were divorced by a decree issued from the Cameron County Court in April, 1977. Prior to the divorce, on March 25, 1977, and the consent of appellant, G. L. took his minor daughter, R. L., to her paternal grandparents' home in Washington County, Pennsylvania, in order that she might receive medical attention. On April 4, 1977, appellant petitioned the Cameron County Court of Common Pleas for a writ of habeas corpus awarding her custody of the child. Preliminary objections as to that court's jurisdiction and venue, filed by the father, were dismissed and custody awarded to the appellant. That decision was appealed to the Superior Court and affirmed. *Liggitt v. Liggitt*, 253 Pa.Super. 126, 384 A.2d 1261 (1978). On July 1, 1977, the grandparents (appellees) with whom the child had continued to live since her placement with them in March of 1977, petitioned the Washington County Court, Orphans' Division, for appointment as guardians of her person.[1] On July 8, 1977, appellant filed for a writ of habeas

1. The appellees' claim for custody of the child was based upon the premise that the appellant had demonstrated a shocking lack of care

corpus in Washington County Court of Common Pleas, Civil Division, and also contested the guardianship proceeding pending in the Orphans' Court of that same county, specifically objecting to its jurisdiction and venue. The objections were dismissed and appellees appointed guardians. The instant direct appeal was filed pursuant to 42 Pa.C.S.A. § 722(3).

Appellant contends that the Washington County Court was without jurisdiction.[2] A number of arguments are offered in support of this contention. We will discuss them *seriatim.* Appellant first suggests that section 712 of the Probate Estates and Fiduciary Code, 20 Pa.C.S.A. § 712, requires the conclusion that the jurisdiction of the subject matter was in Cameron County and not in Washington County.[3] The reason offered to support this argument is

for the health of Rebecca, who was age two at the time. It was charged that as a result of the mother's custody the child was anemic, dehydrated, that her body had numerous sores, blemishes and wounds, that she was underweight, improperly clothed and fed. It is significant that there has been no serious refutation of these charges by the mother. She has rested her legal position upon the challenge to the Washington County Court's jurisdiction to hear the cause.

2. The recently enacted Commonwealth Child Custody Jurisdiction Act, Act of April 28, 1978, P.L. 108, No. 47, § 1 et seq., 11 P.S. § 2401 et seq., expressly provides for jurisdiction in custody cases. *See* section 4 of the Act, 11 P.S. § 2404. However, this Act did not become effective until after the proceeding in the instant matter and is, therefore, not controlling.

3. Frequently, the terms jurisdiction and venue are used interchangeably although in fact they represent distinctly different concepts. Subject matter jurisdiction refers to the competency of a given court to determine controversies of a particular class or kind to which the case presented for its consideration belongs. Venue is the place in which a particular action is to be brought and determined, and is a matter for the convenience of the litigants. *Smith Estate,* 442 Pa. 249, 275 A.2d 323 (1971); *County Const. Co. v. Livengood Const. Corp.,* 393 Pa. 39, 142 A. 9 (1928). Jurisdiction denotes the power of the court whereas venue considers the practicalities to determine the appropriate forum. *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424 (1960); *Hohlstein v. Hohlstein,* 223 Pa.Super. 348, 296 A.2d 886 (1972).

It is clear that the "jurisdictional" objections raised by appellant are in fact questions of venue. All of the courts of common pleas

that since the Cameron County Court of Common Pleas first accepted jurisdiction over the habeas corpus petition filed by appellant, it was the purpose of section 712 to prevent any other court from considering a related matter. This contention clearly misperceives the meaning of section 712. Specifically, appellant refers to the following language of the section:

> § 712. Nonmandatory exercise of jurisdiction through orphans' court division.
>
> The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:
>
> * . * * * * *
>
> (3) The disposition of any case where there are substantial questions concerning matters enumerated in section 711 (relating to mandatory exercise of jurisdiction through orphans' court division in general) and also matters not enumerated in that section.

20 Pa.C.S.A. § 712(3) (Supp.1978–79). This section is concerned with the venue allocations between divisions of the same court of common pleas and not as between the courts of common pleas of sister counties.

Appellant next argues that the Superior Court's ruling that Cameron County Court had venue to try the habeas corpus action [4] should be conclusive in establishing the impropriety of the Washington County Court in considering the question of guardianship. This argument would be persuasive if the habeas corpus action and the guardianship action had the identical venue requisite and they were mutually exclusive. However, this is not the case.

Venue in child custody matters follows the domicile or the residence of the child. *Com. ex rel. Graham v. Graham,* 367

within this Commonwealth have subject matter jurisdiction over custody of children and guardianships over the persons of minors. Since there is no question as to the effectiveness of the service, i. e., jurisdiction over the person, appellant's jurisdictional complaints will be considered as venue complaints.

4. *See Liggitt v. Liggitt,* 253 Pa.Super. 126, 384 A.2d 1261 (1978).

Pa. 553, 80 A.2d 829 (1951); *Com. ex rel. Hickey v. Hickey,* 216 Pa.Super. 332, 264 A.2d 420 (1970). Moreover, the county of domicile of the child's custodian who has the power to produce the child within the county, also has venue over the child's custody although the child is physically outside of the county.[5] It was on the basis of this latter theory that the Superior Court found venue in Cameron County to hear the habeas corpus matter. *Liggitt v. Liggitt, supra.*

■ The action for the appointment of guardians of the person was instituted by appellees in Washington County pursuant to the Probate Estates and Fiduciary Code, *supra.* Section 5111 of the Code sets residence of the minor within the county as the criteria for determining the proper county to entertain that type of proceeding. 20 Pa.C.S.A. § 5111(a).[6] It is not contested that the minor physically resided in Washington County when the action for guardianship was instituted in the court of that county. Thus, venue was in the Washington County court pursuant to the express terms of the act. It is, therefore, apparent that both courts had venue over the matters considered by them.

The real question raised in this appeal is not one of jurisdiction or venue, but rather whether or not the decision of the Cameron County court, having priority in time, should have been controlling. We accept that an action for custody and one for guardianship over the person effect the same interests. *See, e. g., In re Lewis,* 396 Pa. 328, 152 A.2d 666 (1959). We are thus faced with the question as to whether or not this case represents a situation where a court is ignoring the mandates of a sister court of equal jurisdiction which we do not permit. *Cf. Commonwealth v. Demichel,* 442 Pa. 553, 277 A.2d 159 (1971); *See also, Smith v. Gallagh-*

**5.** *See Reilly v. Reilly,* 219 Pa.Super. 91, 280 A.2d 561 (1971); *Com. ex rel. Hickey v. Hickey, supra; Swigert v. Swigert,* 193 Pa.Super. 174, 163 A.2d 716 (1960).

**6.** Section 5111(a) provides in pertinent part:
*Resident Minor:* [a] guardian of the person . . . [over] a minor may be appointed by the court of the county in which the minor *resides.* (emphasis added).

*er,* 408 Pa. 551, 185 A.2d 135 (1962); *cf. Commonwealth ex rel. Soloff v. Soloff,* 215 Pa.Super. 328, 257 A.2d 314 (1969).

We have developed in this jurisdiction two bodies of case law to prevent this type of conflict between the various courts. The first is the doctrine of res judicata[7] with its components merger and bar, and the second is its offshoot, collateral estoppel.[8] Both doctrines rest upon the final judgment rule.[9]

7. "The doctrine of res judicata is based on public policy and seeks to prevent an individual from being vexed twice for the same cause." *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, cert. denied 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76.

   ". . . The original cause is 'barred' by a judgment for the defendant and 'merged' in one for the plaintiff. These principles forbid relitigation of matters actually decided, on the ground that there is no assurance the second decision will be more correct than the first. Moreover, a party is commonly forbidden to raise issues that could have been litigated in the first suit but were not, because of the desirability of settling the entire controversy in a single proceeding." Cramton, Currie and Kay, Cs. Confl. of Laws 2d Ed. ABC, p. 655 (1975).

   "It is well settled that for the doctrine of res judicata to prevail there must be a concurrence of four conditions: 1) identity of issues, 2) identity of causes of action, 3) identity of persons and parties to the action, and 4) identity of the quality or capacity of the parties suing or sued." *Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668, *Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 327 A.2d 72 (1974).

8. "Finally, by 'collateral estoppel,' a valid and final judgment, whether on the merits or not, is conclusive in any subsequent litigation between the parties based on the same or another cause of action as to all essential issues of fact actually litigated in the prior proceeding. Unlike merger and bar (res judicata), which are applicable only when the same cause of action is asserted, collateral estoppel may apply in any subsequent litigation. On the other hand, collateral estoppel is applicable only to essential issues of fact which have been actually litigated." Cramton, Currie and Kay, Cs. Confl. of Laws 2d Ed. ABC, p. 656 (1975).

   "With respect to collateral estoppel we have recently stated that a plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the question in a prior action." *Safeguard Mutual Insurance Company v. Williams, supra,* 463 Pa. at 574, 345 A.2d at 668; *In Re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728, 731 (1975).

9. As we previously noted, "The rules of res judicata are not applicable where the judgment is not a final judgment." Restatement of

■ Neither doctrine, however, is applicable here to permanently foist upon the Washington County court the custody award issued by its sister court. That determination was binding only upon parties to that action or ones in privity. Since this guardianship proceeding was initiated by the paternal grandparents who were neither parties to that action or in privity to those who were, entertainment of the action was proper.[10]

Even if we were to accept the view that the appellees were in privity with their son, the natural father, the same result would be obtained. There was no "final judgment" rendered by the Cameron County court from which to assert the doctrines of res judicata or collateral estoppel. The court in *Irizarry Appeal*, 195 Pa.Super. 104, 108, 169 A.2d 307, 309 (1961) stated:

> So it appears that the law in Pennsylvania is clear that full faith and credit must be given to the decree of custody of a sister state so far as it determines the status of the child at the time it was issued, but, if the Pennsylvania Court has jurisdiction, it may, because of the interest of the Commonwealth in the child, and because the welfare of the child is a paramount consideration, *and*

Judgments, § 41 (1957). See 50 C.J.S. § 620; P.L.E. Judgments § 278.

"According to Anglo-American tradition every man is entitled to his day in court—a competent court with jurisdiction over the subject matter and the parties—and he is entitled to appeal from any adverse judgment to a higher court. But, when a final decision has been reached, that should be the end of it. This is the heart of the doctrine of res judicata: a final judgment by a court of competent jurisdiction is conclusive upon the parties in any subsequent litigation involving the same cause of action." Green, Basic Civ. Proc. p. 201 (1972).

10. While privity between the father, the defendant in the original custody action, and the paternal grandparents, appellees here, might have existed under the doctrine of representation, as recognized in Restatement of Judgments § 85(2) (1942), no such allegation was advanced by appellant nor does the evidence presented establish such a relationship as a fact.

*because decrees of custody are temporary in nature and subject to modification by changing conditions,* determine custody on the present facts *and may even exercise its independent judgment on the same facts that determine the foreign state's order.* (citations omitted) (emphasis added).

While this case deals with decisions by sister states in custody matters, its applicability has the same force between sister counties. It was the recognition of the temporary nature of custody decrees which was the basis of the decision in *Commonwealth ex rel. v. Daven,* 298 Pa. 416, 148 A. 524 (1930). There the issue of res judicata in custody proceedings was directly addressed and the lower court chastised for refusing "to hear evidence as to present conditions or pass upon the merits of the case when heard." *Commonwealth ex rel. v. Daven, supra,* 298 Pa. 419, 148 A. at 525.

In our opinion, the true view of the question is that, where the custody of a child has been passed upon by the proper court in one jurisdiction, who has heard the case and made an adjudication incorporating therein certain findings of facts, the facts so found should, as to the parties participating therein, be treated as established and not open to question in another jurisdiction, especially where the parties so appearing neglected to avail themselves of the statutory right of appeal. Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interests of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court rehearing the case. *Id.,* 298 Pa. at 422, 148 A. at 527.

It, therefore, seems proper to agree with Justice Walling when he quoted another court: "Judgments and decrees concerning children are never res judicata as to facts and conditions subsequently arising." *Commonwealth ex rel. v. Daven, supra,* 298 Pa. 421, 148 A. 526. *See Commonwealth ex rel. Hickey v. Hickey,* 216 Pa.Super. 332, 264 A.2d 420 (1970). In the instant case, the record fully supported the

Washington County court's result. We have found no juris-
dictional or venue objection that would warrant the setting
aside of that judgment. Moreover, we are not persuaded
that the best interest of the child will be best served by an
adherence to a sterile doctrine of time priority of judgments.

The decree of the Washington County Court of Common
Pleas, Orphans' Division, as to the appointment of guardian-
ship of the person of the minor, R. L. L., is affirmed.

MANDERINO, J., did not participate in the decision of
this case.

ROBERTS, J., files a dissenting opinion in which EAGEN,
C. J., joins.

ROBERTS, Justice, dissenting.

I dissent. The majority concludes that the Orphans' Court
Division of the Court of Common Pleas of Washington
County correctly heard and granted appellees' petition for
guardianship of the person of their granddaughter, R. L. L.
The majority does so even though: (1) another court of this
Commonwealth, the Court of Common Pleas of Cameron
County, had already assumed jurisdiction in the matter and,
after full hearing, entered an order that appellant, the
child's natural mother, is entitled to custody, (2) the Superior
Court affirmed this order, and (3) appellees have failed to
demonstrate why they could not present their claim in
Cameron County. In my view, sound judicial discretion
required the Washington County Orphans' Court here to
defer to the Court of Common Pleas of Cameron County and
to dismiss appellees' petition.

There is no doubt that the Washington County Orphans'
Court had subject-matter jurisdiction to hear appellees' peti-
tion. See 20 Pa.C.S. § 5111(a). It is equally true, however,
that appellees sought to litigate the precise issue already
adjudicated by the Cameron County Court.*

---

* As the majority indicates, appointment of appellees as guardians over
  the child's person would confer upon appellees the same rights

It is true that in custody matters the need may arise for a reexamination of a previous adjudication in light of changed circumstances. See e. g., *Commonwealth ex rel. Rogers v. Daven*, 298 Pa. 416, 148 A. 524 (1930). But in my view, subsequent determinations are more properly made by the court making the initial determination. The first court entering judgment is already familiar with the matter, and its expertise surely will facilitate disposition.

This policy of deference, though, would promote more than judicial economy. It is well-documented that parties involved in custody disputes have shifted children from one location to another solely for the purpose of obtaining a favorable forum. Apart from its effect upon the certainty of judgments, this shifting has an obvious impact upon the child caught between litigants.

Our Legislature has recognized the above concerns and has implemented this policy of deference. The Commonwealth Child Custody Jurisdiction Act, Act of April 28, 1978, P.L. 108, §§ 1 et seq., 11 P.S. §§ 2401 et seq. (Supp.1979), expressly directs that, except in limited circumstances,

> "If another court has made a custody decree, a court before which a petition for modification is pending shall not modify the decree of the other court unless it appears to the court before which the petition is pending that the other court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify its decree and the provisions of section 9(b) of this act will not be violated by an exercise of jurisdiction by the court before which the petition is pending."

Id., § 15(a). See also id., § 4 (jurisdictional prerequisites). This section is designed to "avoid jurisdictional competition and conflict with courts of the respective counties of the Commonwealth in matters of child custody which have in the past resulted in the shifting of children from county to

appellant already had been granted by way of the Cameron County Court's order granting appellant custody.

county with harmful effects on their well-being." *Id.* § 2(a)(1). See also *id.,* §§ 2(a)(2)–2(a)(9). Although this legislation was not expressly effective at the time appellees sought appointment of guardianship of R. L. L.'s person, its principles are indisputably sound and should be adopted by this Court. See *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 438, 388 A.2d 730, 734–35 (1978) (citing cases).

Accordingly, I would vacate the Washington County Orphans' Court's appointment and direct that appellees' petition be dismissed.

EAGEN, C. J., joins in this dissenting opinion.