409 A.2d 8

**In re ESTATE OF Jack S. COOPERMAN, Deceased.**

**Appeal of Stanford COOPERMAN and Lawrence Cooperman.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1979.

Decided Dec. 21, 1979.

David F. Alpern, Alpern & Alpern, Pittsburgh, for appellants.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, for Estate of Bonnie B. Cooperman, Deceased.

David J. Greenberg, Pittsburgh, for Estate of Jack Cooperman and Life Insurance Trust.

Stephen Israel, Pittsburgh, for Robert Halsband.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

PER CURIAM:

Appellants[1] seek to surcharge appellee Union National Bank of Pittsburgh, the executor of Jack S. Cooperman's estate, for selling stock owned by the estate at a price claimed to be less than adequate consideration. The Orphans' Court Division of the Allegheny County Court of Common Pleas rejected appellants' claim as meritless and refused to impose a surcharge. We agree, and affirm the decree.

---

1. Appellants are the co-executors of the estate of decedent's deceased wife.

Decedent Cooperman, with his father-in-law and brother-in-law, each owned one-third of the stock in a corporation, B&C Playlands, Inc., principally engaged in the sale of novelty items and maintenance of arcade machines. The minutes of a corporate shareholder meeting, held June 1, 1974, govern the rights of surviving owners to purchase decedent's interest in the corporation. These minutes provide:

"In the event of the death of Jack Cooperman . . . his estate shall be paid ⅓ the market value of the corporate net worth."

Decedent died on December 8, 1975. Appellee filed its inventory of the estate on September 8, 1976. The estate's one-third interest in B&C Playlands, Inc. was valued at $2,576.33. No objection to the inventory was interposed. On September 24, 1976, appellee sold the estate's interest in the corporation to decedent's brother-in-law, a surviving owner, for this amount. Appellee filed its first accounting on March 28, 1977, and appellants' timely objection followed.

Appellants claim that appellee improperly sold decedent's stock at the inventory value. According to appellants, this value did not reflect the "market value" of the stock. We disagree. The facts found by the orphans' court demonstrate that there is no basis for concluding that appellee's sale of B&C Playlands, Inc. stock was improper. As the orphans' court stated:

"The evidence in this record does not establish a value of Jack's one-third which would support a surcharge of the executor in any amount. It is very difficult from this record to establish a fixed 'net worth' or 'market value' of the business at anytime pertinent to the issue involved in this case. . . ."[2]

The orphans' court's findings of fact are supported by adequate and competent evidence, and are therefore controlling. *McCrea Estate*, 475 Pa. 383, 386–87, 380 A.2d 773, 775 (1977).

2. The orphans' court concluded:
"The evidence shows that the business was subject to considerable volatility in its earnings and the value of its earnings and the value

An executor, when determining the value of an estate's assets, must exercise only "common skill, common prudence, and common caution . . . . [H]e is not liable when he acts in good faith as others [prudent men] do with their own property . . . [.]" *Mereto Estate*, 373 Pa. 466, 468, 96 A.2d 115, 116 (1953) (quoting cases). "[T]hose who seek to surcharge a fiduciary have the burden of establishing his wrongful conduct." *Estate of Ellis, III*, 460 Pa. 281, 285, 333 A.2d 728, 730 (1975) (citations omitted). We agree with the orphans' court that appellee acted with the requisite skill, prudence, and caution, and that thus there is no basis on which to surcharge appellee.

of its assets. For example, in 1974 there seemed to be an abundance of cash available and in that year Jack S. Cooperman received $26,000.00 as his salary from the business. In 1975 Jack received $12,500 as his salary and there was a dearth of cash. In 1975 the business was unable to pay its bills and finished the year with $14,591.00 of unpaid bills. It is intimated by counsel for the objectors that Jack S. Cooperman directed cash receipts of the business into his own pockets and that these monies do not show in the accounting records which were kept and supervised by Warren S. Bloch, the certified public accountant, who testified at the audit hearing. For the year 1975, at the end of which Jack was killed, the Objector's Exhibit B shows that the business had a net loss from operations of $23,703.00 which reduced its net worth to $6,729.00. The business owned real property in downtown Pittsburgh on Liberty Avenue, of uncertain value. In addition, the real property was heavily mortgaged in the aggregate amount of $186,-471.00. At the end of 1975 the business owed other obligations amounting to $49,522.00.

Mr. Bloch, the accountant who kept the books of B. & C. Playlands, in connection with the meaning of the term, 'the market value of the corporate net worth' as used in the corporate minutes, supra, testified as follows (Notes of testimony, page 162):

'Q. Excuse me, 'market value of the corporate net worth.' What does that mean?

A. That is the difference between the current assets based on cost normally, the fixed assets based on cost, except perhaps real estate, if there is any, minus the obligations.

Q. Are you saying that is the value of the assets less the liabilities?

A. Yes.

Q. To arrive at the net worth?

A. Yes.' "

The decree of the orphans' court is affirmed. Each party pays own costs.

MANDERINO, J., did not participate in the decision of this case.