# Beaumont v. ETL Services Inc.

C.P. of Washington County, no. 91-4272.

*Louis B. Loughren,* for plaintiffs.

*James R. Kahn,* for defendant ETL Services Inc.

*John Pettit,* for defendant Gergely Truck Sales.

*Jennifer Kirschler,* for defendant Conrail.

GILMORE, *J.,* November 22, 1995—This matter is before the court on multiple motions for summary judgment filed by the various defendants to this action. Defendants ETL Services Inc., John R. Gergely t/d/b/a Gergely Truck Sales and Consolidated Rail Corporation have filed a joint motion for summary judgment on the basis of collateral estoppel. The joint motion for summary judgment also requests the case be dismissed on the basis that the plaintiffs' case requires the use of James Beaumont's deposition, and that that deposition is inadmissible. ETL has also moved for summary judgment against the plaintiffs and the other defendants because ETL was dissolved more than two years before the commencement of this suit. In its second supplemental motion for summary judgment, ETL asserts the plaintiffs' theories of design defect and failure to warn are deficient as a matter of law. Finally, Conrail moves for summary judgment on the basis that it did not par-

ticipate at all in the design or manufacture of the "track maintenance vehicle" in question, and that it only leased the vehicle for a few years.

The first basis for summary judgment advanced by all of the defendants in their joint motion is that the plaintiffs' action is barred by the doctrine of collateral estoppel. The defendants argue that collateral estoppel "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Kaller's Inc. v. John J. Spencer Roofing Inc.,* 388 Pa. Super. 361, 365, 565 A.2d 794, 796 (1989). Although this statement is an accurate description of collateral estoppel generally, it fails to provide any guidance for when a valid claim of collateral estoppel exists. The defendants proceed to argue that the plaintiffs' present claim satisfies the four elements of the test set out at length in *In re Estate of R.L.L.,* 487 Pa. 223, 409 A.2d 321 (1979). Although this case uses a four part test the court will examine only the first prong of that test. The first prong of that test requires that "the issue decided in the prior adjudication was identical with the one presented in the later action." *In re Estate of R.L.L., supra* at 228 n.8, 409 A.2d at 324 n.8. In order to determine whether the present case satisfies this prong of the test, the court must determine what issue was decided in the prior adjudication.

The prior adjudication consisted of a civil case in the United States District Court for the Western District of Pennsylvania. At the conclusion of that trial, the jury returned a verdict in favor of the defendant. Specifically, the jury found that the crane was not defective when sold in 1979. In fact, it was the only specific finding that the jury made. Thus, if the issue to be

decided in the instant case was whether the crane was defective in 1979, then the first prong of the test would be satisfied. However, that issue is not the subject of this suit. The subject of this case is the "track maintenance vehicle," of which the crane manufactured by Simon-R.O. was merely a component part. The issue in this case is whether the track maintenance vehicle was defective, defectively designed, or whether ETL, Gergely, or Conrail were negligent in the design and/or construction of this vehicle.

The next issue addressed by the joint motion for summary judgment is whether the plaintiff should be permitted to use the deposition of James Beaumont, taken for use in the federal action, as affirmative evidence in this case and whether the plaintiff's expert witnesses are entitled to use that deposition as the basis for expert opinion testimony. The plaintiff seeks to introduce Mr. Beaumont's deposition because he has passed away, and will not be able to testify at trial. Mr. Beaumont's testimony is especially critical since he was the only eyewitness to the incident giving rise to the present case.

The defendants argue that the deposition is inadmissible since they had no opportunity to cross-examine Mr. Beaumont at the deposition, since they were not parties to the federal suit. They argue that the introduction of this evidence would prejudice their case. The main thrust of the defendants' argument is that the introduction of the deposition does not satisfy the requirements of Rule 4020(b). That rule is permissive in the sense that it allows the admission of a deposition of witnesses to a previous action subsequently dismissed without regard to a substitution of parties. The rule allows the use of previously taken depositions if the parties substituted in a subsequent action are the rep-

resentatives or successors in interest to the original parties. *Ryan v. Kirk,* 407 Pa. 197, 180 A.2d 55 (1962). Thus, the defendants have correctly stated that the use of Mr. Beaumont's deposition is not admissible under Rule 4020(b). However, this conclusion is not dispositive of the admissibility of the deposition. Plaintiffs argue that Mr. Beaumont's deposition is admissible under Rule 4020(a)(3)(e):

"(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof, if required, in accordance with any one of the following provisions: . . .

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . .

"(e) upon application and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

This rule allows a deposition to be admissible as substantive evidence if two requirements are met. The first requirement is that the party against whom the deposition is sought to be introduced was present or represented at the taking of the deposition. Rule 4020(a). The parties do not dispute that the current defendants, ETL, Gergely, and Conrail, were not present at the deposition of Mr. Beaumont taken in connection with the action in federal court against Simon-R.O. nor did the defendants have notice of that deposition. The issue thus becomes whether the defendants were constructively represented at the deposition. At least one court in Pennsylvania has opined that a party has been "con-

structively represented" at the taking of the deposition if the party in the previous action had the incentive to vigorously protect the same interests that the parties to the current action would want to protect. *Gosha v. City of Philadelphia,* 7 Phila. 302 (1982).

The rationale for the requirement of representation is that the party against whom the admission of the deposition is sought would be unfairly prejudiced if it did not have the opportunity to cross-examine the witness in order to protect its interests. In *Gosha,* the plaintiff's decedent fell due to a sidewalk defect. The plaintiff's decedent sued the City of Philadelphia and an individual. The plaintiff's decedent gave a deposition in connection with this case, and subsequently died of causes unrelated to the case. After the decedent's death, the Commonwealth was joined as a defendant. At trial the plaintiff sought to use the decedent's deposition as substantive evidence against the Commonwealth. The court held that the Commonwealth was "constructively represented" at the deposition since the city would have vigorously cross-examined the deponent on the same issues that the Commonwealth would have contested. This emphasis on the similar interests of the cross-examining party and the party against whom the admission of the deposition is sought has been persuasively argued in Professor Wigmore's seminal treatise *Wigmore on Evidence.* Section 1388 of that treatise states:

"The principle then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue."

Professor Wigmore's assertion is that it is only the protection of the interest that is vital to assuring that the party against whom the deposition is offered against is not unfairly prejudiced. As the court noted in *Gosha:*

"It is true that the Commonwealth was prejudiced by the use of the deposition against it. However, this is the type of prejudice that is present in every case, civil or criminal, when evidence is admitted against a party. The question to be addressed is whether it was unfairly and improperly prejudicial. We must answer no. At the time of the deposition all of the appropriate issues were explored by the city. The issues on the questions of liability were identical as to both defendants. The Commonwealth has not particularized any issue or specific issue that was not properly explored and addressed by the city." *Gosha, supra* at 307-308.

As in *Gosha,* this court must determine whether the use of Mr. Beaumont's deposition, taken without the opportunity for cross-examination by the current defendants, would unfairly prejudice those defendants.

In the present case, Mr. Beaumont would have been a fact witness. As the court noted earlier, he was the only eyewitness to the incident that forms the basis of the suit, namely the forklift falling on him. Mr. Beaumont also would have been a fact witness concerning the injuries he sustained as a result of the accident. The present defendants would want to cross-examine on both of these issues. However, these issues were in fact the ones that were contested by Simon-R.O. in the federal suit. In addition, since Simon-R.O. was the sole defendant in that case and would have been wholly liable for the amount of damages awarded, Simon-R.O. would have had as great an incentive to vigorously cross-examine Mr. Beaumont during the taking of his deposition as the current defendants would have

in the trial in this case. The court holds that the present defendants would not be unfairly prejudiced by the admission of Mr. Beaumont's deposition at trial. Consequently, the plaintiff's experts are entitled to use that deposition as the foundation for their opinions.

The court now turns its attention to the issue of whether ETL is entitled to summary judgment against the plaintiffs and the other defendants on the basis that the present action was initiated by the filing of a writ of summons on July 15, 1991 after ETL had been officially dissolved in the State of Delaware on June 30, 1989. Both Pennsylvania and Delaware, the state of ETL's incorporation, have statutes that permit a corporation to sue or be sued for a certain period of time after formal dissolution of the corporation. The Pennsylvania statute, codified at 15 Pa.C.S. §1979(a)(2), provides for a two year period, whereas the Delaware statute provides for a three year period. The resolution of this issue depends upon which state's law to apply.

ETL argues that the substantive law of Pennsylvania must be applied since it has the greatest interest in the litigation. ETL points out that Pennsylvania has adopted a hybrid approach of "governmental interest analysis" and the "significant relationship" analysis contained in the Restatement (Second) of Conflict of Laws §145 (1971). Section 145 applies to the choice of law with respect to tort actions. Under this approach the courts look at both the contacts of each state to the incidents giving rise to the case, and the interests of the several states in the litigation. *Giovanetti v. Johns-Manville Corp.,* 372 Pa. Super. 431, 436, 539 A.2d 871, 873 (1988); *Normann v. Johns-Manville Corp.* 406 Pa. Super. 103, 108, 593 A.2d 890, 893 (1991); *Griffith v. United Air Lines Inc.* 416 Pa. 1, 203 A.2d 796 (1964), and *McSwain v. McSwain,* 420 Pa. 86,

94-95, 215 A.2d 677, 682 (1966). The court agrees that the questions of tort law raised by the present case must be determined by the substantive law of Pennsylvania.

The issue before the court, however, is whether a cause of action can be maintained against ETL after its dissolution. This issue requires the court to examine the body of corporate law of Pennsylvania and Delaware. The issue of which law to apply has not been addressed by an appellate decision in Pennsylvania. However, this exact question has been addressed by other states. The Colorado Supreme Court has opined that these statutes are substantive and not procedural law: "these statutes which set forth a dissolving corporation's capacity to sue or be sued must be viewed as substantive. They define whether there is an entity in existence available to be sued." *Casselman v. Denver Transway Corp.,* 577 P.2d 293, 295 (1978). Thus, these statutes are not to be applied as the procedural laws of the forum under general conflict of laws principles. Since these statutes are substantive, as opposed to procedural, the court in *Casselman* concluded: "the question of whether a foreign corporation can be sued after dissolution depends upon the law of the state of incorporation." *Casselman,* 577 P.2d at 295. See also, *Oklahoma Natural Gas Company v. Oklahoma,* 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634 (1927). Thus, the corporate law of Delaware applies to this issue. Since the present action was filed within three years of ETL's dissolution, the action is not untimely, and ETL's motion for summary judgment on this basis is denied.

ETL's final argument for summary judgment is that the plaintiffs' theories of design defect and failure to warn are deficient as a matter of law because the theories would have required ETL to have warned the plaintiff's

decedent of obvious dangers or added safety devices which are patently impractical. The court does not think that an accurate determination of these two issues can be made at this time. This determination can only be made once all of the evidence on these two points is introduced at trial.

Finally, Conrail has moved for summary judgment on the basis that it cannot be liable since it was a lessee of the vehicle and was not in the chain of distribution. ETL joined Conrail as an additional defendant for the purposes of contribution and indemnification. ETL argues that if it is liable to the plaintiff for damages under either a strict liability or a negligence theory, then Conrail is liable to ETL. Conrail argues that summary judgment is appropriate since it cannot be liable to the plaintiff on the underlying claim as a matter of law.

Conrail's first argument is that it cannot be held strictly liable since it was not a supplier of the track maintenance vehicle under section 402A of the Restatement (Second) of Torts and supporting Pennsylvania case law. *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Although section 402A only applies to sellers of defective products on its face, the case law supports a broader application. The case law supports a reading of section 402A which creates strict liability, not only for sellers and manufacturers, but also for any supplier who undertakes to supply the product to the consuming public. *Burch v. Sears, Roebuck and Co.,* 320 Pa. Super. 444, 456, 467 A.2d 615, 621 (1983). Under this interpretation lessors have been held liable under a strict liability theory. *Id.* Lessees, however, have not been held liable. The distinction between lessors and lessees in this context is that where lessees are only users of the product, lessors supply the product to the lessee. Since a lessee

does not supply the product to anyone, but merely uses it and then returns it to the lessor at the end of the lease, a lessee is not liable in strict liability under the present state of the law in this Commonwealth.

Conrail's second argument is that it is not liable under a negligence theory since it did not participate at all in the manufacture or design of the track maintenance vehicle. In furtherance of this argument, Conrail submitted the affidavit of Paul Rossi, who has been employed by Conrail in its materials and purchasing and automotive subgroup since 1977. In that affidavit Mr. Rossi stated that while ETL was Conrail's fleet manager and supplied all vehicles for Conrail's use, Conrail did not provide any vehicle design specifications to ETL until after the design and manufacture of the track maintenance vehicle that is the subject of this suit. Therefore, since Conrail's only connection with the instant litigation is that it leased the subject vehicle for a period of years prior to the incident in question, its motion for summary judgment should be granted.

## ORDER

AND NOW, November 22, 1995, after argument on the various motions for summary judgment filed by the defendants ETL Services Inc., John R. Gergely t/d/b/a Gergely Truck Sales and Consolidated Rail Corporation, the court denies all such motions except for Consolidated Rail Corporation's motion for summary judgment which the court grants. Consolidated Rail Corporation is hereby dismissed from the case, with prejudice.