This stay is automatically dissolved by the failure to file the aforesaid petitions by June 6, 1997.

■

In the Matter of the ESTATE OF Mary C. CAMPBELL, Deceased.

Appeal of Scott A. CAMPBELL, Executor of the Estate of Douglas A. Campbell, Deceased.

Patricia M. Aufdenberg, Administratrix of the Estate of Mary C. Campbell, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 28, 1997.
Filed April 4, 1997.

John W. McCandless, Erie, for appellant.

James E. Marsh, Jr., Erie, for Aufdenberg, participating party.

Before TAMILIA, SAYLOR, and SCHILLER, JJ.

SAYLOR, Judge:

This appeal concerns a surcharge imposed by the Court of Common Pleas of Erie County on the estate of Douglas A. Campbell ("Husband") in favor of the estate of Mary C. Campbell ("Wife"). Having concluded that the issues raised by Appellant, Scott A. Campbell, Husband's son and executor, are without merit, we affirm.

Wife died testate on November 7, 1982. Husband was named as executor in her will, which provided in pertinent part as follows:

All the rest, residue and remainder of my estate [after payment of debts] ... shall be divided in the following manner:

1) I hereby give, devise and bequeath my share of all jointly owned assets with my husband unto my husband, DOUGLAS A. CAMPBELL, absolutely and forever.

2) I then hereby direct that the rest, residue and remainder of my estate be placed in trust for my children [from a previous marriage], ... with my husband, DOUGLAS A. CAMPBELL, named as trustee, and having sole discretion to invest and control the trust, except that my husband, DOUGLAS A. CAMPBELL, shall only be able to receive from said trust(s) any profits, interests or dividends, etc., to have as his own, until his death, and no part of the principal. Further, that if by necessity, my husband, DOUGLAS A. CAMPBELL, cannot adequately meet his expenses or needs for adequate maintenance and support and/or costs to enable him to live as he had while I was alive, then he shall at any time be permitted to recover from the principal, any amounts needed to cover these costs and expenses. Upon my husband's death, the remainder of the principal shall be divided equally among my children....

However, as the trial court noted in its opinion of February 9, 1996, Husband "failed to take any steps to comply with the formal requirements of probate. He did not file an inventory nor [sic] an account, and he never distributed any of the estate's assets." Husband died on January 4, 1993.

On October 14, 1993, Wife's daughter, Patricia Aufdenberg ("Appellee"), was named administratrix D.B.N.C.T.A. of Wife's estate. Approximately one year later, Appellee petitioned the trial court to issue a citation to Appellant, as executor of Husband's estate, to show cause why he should not file an account of the administration of Wife's estate and be surcharged for failing to properly administer such estate. The trial court granted Appellee's petition.

On March 29, 1995, Appellant, identifying himself as "surviving trustee[,]" filed an informal first and partial account, audit, and proposed schedule of distribution ("the informal account") for the stated purpose of "acquaint[ing] interested parties with the transactions that have occurred during the administration of the testamentary trust by [Husband] from 11/7/82 to 1/4/93." Appellee filed numerous objections to the informal account, and the trial court held a hearing on the matter.

In an order entered February 9, 1996, the trial court sustained Appellee's objections. The trial court noted in the accompanying opinion that Husband had failed to file a timely inheritance tax return, had allowed the value of the estate's holdings to diminish through a poor investment strategy and delay in liquidating certain assets, and had taken income from the estate which he was not entitled to receive. These actions, the court concluded, constituted a breach of Husband's financial responsibility as executor of Wife's estate; therefore, Appellant, as "substitute executor" of Wife's estate, should be surcharged for the losses sustained by that estate. Reasoning as follows, the court rejected Appellant's claim that Husband's duties had been those of a trustee rather than those of an executor:

A testator may devise property to a trust upon her death by making such a provision in a will, and indeed, [Wife] did so. However, a trust does not come into existence unless the subject matter of the trust is ascertainable. Therefore, if an estate is settled in such a way that no assets are available or for other reasons [are] not distributed to the trust, then the trust never comes into actual existence. There can be no other conclusion since the "res" of the trust would not have been identified.

Under the facts of the present case, no property was ever identified and distributed to the trust by [Husband] as [Wife] had provided for in her will. Therefore, throughout the entire period in question, [Husband]'s duty was to carry out the responsibilities of the executor consistent with the requirements of law. [Husband's] role as trustee never developed because a

trust never came into existence.... It is only when the property from the estate is transferred to a trustee that the executor is discharged from the responsibilities as the testator's personal representative.

(Citations omitted.)

Accordingly, the trial court ordered Appellant to pay to Wife's estate the sum of $34,822.69, consisting of $21,407.25 in lost principal, $11,999.95 in income paid to Husband, and $1,415.49 in inheritance tax penalty. In addition, the court ordered Appellant to pay "an amount equal to the average rate of interest on U.S. Treasury Bills on the amount of $55,425.35 for each year since the date of [Wife's] death." Appellant filed exceptions, which the trial court denied in its order of May 6, 1996.[1] This appeal followed.

On appeal, Appellant raises the following issues:

1. Was the trial court's determination that the trust res in this case was not "ascertainable" an error of law and contrary to the evidence and any reasonable inferences therefrom?

2. Was the trial court's determination that Husband was under the fiduciary duty of an executor, not a trustee, an error of law and contrary to the evidence and any reasonable inferences therefrom?

3. Did Appellee fail to produce sufficient evidence to establish the elements of her case-in-chief?

4. Did the trial court err in permitting Appellee to testify in violation of the Dead Man's Act?

5. Did the trial court err in allowing Appellee to recover a surcharge after she had acquiesced in Husband's investment decisions?

In reviewing these issues, we are mindful of the following standard of review:

Our role in reviewing [Appellant's claims] is to determine whether the record is free from legal error and whether the findings of the Orphans' Court are supported by competent and sufficient evidence and "are not predicated upon capricious disbelief of competent and credible evidence." *In re Estate of Dembiec*, 321 Pa.Super. 515, 520, 468 A.2d 1107, 1110 (1983). The findings of an Orphans' Court judge who heard the testimony of witnesses are to be given the same weight as a jury verdict, particularly when those findings are based on determinations of credibility. *Id.* The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion. *In re Masciantonio's Estate*, 392 Pa. 362, 367, 141 A.2d 362, 365 (1958).

*In re Estate of Kessler*, 419 Pa.Super. 142, 145–46, 615 A.2d 65, 66–67 (1992), *appeal denied*, 533 Pa. 660, 625 A.2d 1193 (1993).

█ In his first issue, Appellant argues that the trial court erred in finding that the trust assets were not ascertainable and, as a result, that the trust never came into existence. The contrary is true, Appellant contends. Therefore, he argues in his second issue, Husband was acting as a trustee rather than as an executor, and the trial court erred in measuring his actions against the strict requirements applicable to an executor rather than against the broad grant of discretion allowed to him as a trustee.

Because the resolution of Appellant's second issue is dependent upon the resolution of the first, we will consider these issues together. We begin by analyzing the respective fiduciary capacities of executor and trustee.

█ An executor's duty is to take custody of the estate and to administer it so as to preserve and protect the property for distribution to the proper persons within a reasonable time. *In re Estate of Kurkowski*, 487 Pa. 295, 409 A.2d 357 (1979). In the discharge of this duty, an executor "is regarded as a fiduciary and is held to the highest degree of good faith." *Id.*, 487 Pa. at 301, 409 A.2d at 361. He or she will be required to exercise the same degree of judgment, skill, care, and diligence that a reasonable or

1. To be precise, the trial court entered two orders on that date. The first order overruled Appellant's exceptions, and the second made final the order of February 9, 1996. For the sake of convenience, we will consider the two orders as one.

prudent person would ordinarily exercise in the management of his or her own affairs. *Id.; In re Estate of McCrea,* 475 Pa. 383, 380 A.2d 773 (1977); *Ellis' Estate,* 460 Pa. 281, 333 A.2d 728 (1975); *Lohm's Estate,* 440 Pa. 268, 269 A.2d 451 (1970); *Maurice's Estate,* 433 Pa. 103, 249 A.2d 334 (1969); *In re Estate of Geniviva,* 450 Pa.Super. 54, 675 A.2d 306 (1996); *In re Estate of Gordon,* 354 Pa.Super. 274, 511 A.2d 869 (1986), *appeal denied,* 514 Pa. 647, 524 A.2d 494 (1987).

Where the investment of estate assets is concerned, an executor is further restricted by Section 3316 of the Probate, Estate and Fiduciaries Code ("the Probate Code"), 20 Pa.C.S.A. 101 *et seq.* Section 3316 provides that the personal representative may, but has no duty to, invest the funds of the estate.

> Any such investment, except as the court or the will may otherwise authorize or direct, shall be restricted to obligations of the United States or the United States Treasury, of the Commonwealth, or of any political subdivision of the Commonwealth, and to [certain] interest bearing deposits ... and to savings accounts in [federally insured] savings associations....

20 Pa.C.S.A. 3316.

■ It is settled law that an executor who negligently causes loss to an estate may properly be surcharged for the amount of such loss. *Ellis, supra; Lohm, supra; Geniviva, supra; Gordon, supra.* This, of course, is the burden which Appellant, on behalf of Husband's estate, seeks to avoid by casting Husband in the role of trustee rather than executor.

■ A trustee is charged with the duty of "receiv[ing] trust property and administer[ing] it." *In re Speare's Estate,* 349 Pa. 76, 80, 36 A.2d 489, 491 (1944). Phrased differently, the primary duty of a trustee is to preserve the trust assets and to ensure the safety of the trust principal. *Estate of Pew,* 440 Pa.Super. 195, 655 A.2d 521 (1994). As with an executor, the standard of care applicable to a trustee is that which a person of ordinary prudence would observe in the

care of his or her own estate, and the penalty for failure to meet this standard is a surcharge. *Estate of Stephenson,* 469 Pa. 128, 364 A.2d 1301 (1976); *Pew, supra.*

Under Chapter 73 of the Probate Code, however, the investment powers of a fiduciary such as a trustee are broader in scope than those of a personal representative. *See* Official Comment—1972 to 20 Pa.C.S.A. 7301 ("fiduciary" as defined in this chapter excludes personal representatives, whose investment powers are more limited in scope). Section 7302 provides in pertinent part as follows:

> (a) **Specifically authorized.**—Subject only to the provisions of the governing instrument, if any, a fiduciary may accept, hold, invest in, and retain, any of the investments authorized by this chapter,[2] and shall not be liable for loss on such investments so long as he exercises due care and prudence in the performance of his duties in regard to them. "Legal investment" or "authorized investment" or words of similar import used in a trust instrument shall be construed to mean any investment authorized by this chapter.
>
> (b) **Prudent man rule.**—Any investment shall be an authorized investment if purchased or retained in the exercise of that degree of judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income to be derived therefrom as well as the probable safety of their capital....

20 Pa.C.S.A. 7302.

Moreover, Section 7319 provides that a testator or settlor may specify the trustee's investment powers:

> (a) **General rule.**—The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment

---

2. Subsequent sections of Chapter 73 set forth the circumstances under which certain types of property, including the following, shall constitute "authorized investments": government obligations, 7303–7306; corporate bonds, 7307; mortgages, 7308; fractional interests, 7309; stocks, 7310; real estate, 7311.

or noninvestment of principal and income ...; and whenever any such provision shall conflict with this chapter, such provision shall control notwithstanding this chapter....

20 Pa.C.S.A. 7319(a). *See also Estate of McCredy,* 323 Pa.Super. 268, 470 A.2d 585 (1983) (where terms of trust instrument prescribing trustee's investment powers conflict with terms of Probate Code, trust instrument controls).

In the present case, Wife gave Husband, as trustee, "sole discretion" in matters of investment. Appellant contends that this "broad grant of authority" would have operated to relieve Husband's estate of liability to Wife's estate if the trial court had viewed Husband as a trustee rather than as an executor. The correctness of Appellant's assertion is arguable.[3] We do not need to decide this issue, however, because we agree with the trial court that Husband's status was that of executor rather than trustee.

Appellant contends that the trial court erred in finding that because Wife's intended trust never came into existence, Husband did not act as a trustee. Appellant, citing *In re Thompson's Estate,* 416 Pa. 249, 206 A.2d 21 (1965), notes that the only requirements for the raising of a trust are sufficient words to create a definite object, a definite subject, and a trust relationship. He argues that the trial court erred in finding that the second of these, the subject or *res* of the trust, was not "ascertainable." In fact, Appellant asserts, Wife's will clearly and unambiguously designated the subject matter of the trust, namely, the remainder of her estate. Although the will did not identify the specific items of property which constituted the remainder, Appellant contends that such lack of specificity was not fatal, as the specific items of property became ascertainable at Wife's death.

Appellee argues that Appellant's emphasis on the trial court's use of the word "ascertainable" is misplaced. We agree. The crux of the trial court's reasoning on this issue is not that the subject matter of the trust was unknown, but that

no property was ever identified **and distributed to the trust** by [Husband].... It is only when the property from the estate is transferred to a trustee that the executor is discharged from the responsibilities as the testator's personal representative.

(Emphasis added.)

 Case law supports the trial court's conclusion. Even though the same person or entity is named as executor and as trustee, the respective fiduciary capacities of executor and trustee are legally distinct. *In re Hamilton's Estate,* 351 Pa. 419, 41 A.2d 567 (1945). In such a situation, a distribution from executor to trustee is an actual distribution, regardless of the fact that the same person or entity serves in both capacities. *Id.; Doster's Estate,* 346 Pa. 455, 31 A.2d 142 (1943); *Estate of Mack,* 111 Pa.Super. 20, 169 A. 468 (1933). "[T]he legal effect [of such a transaction] is not different from what it would have been if there had been two separate corporations [or individuals], one acting separately in each representative capacity." *Mack,* 111 Pa.Super. at 24, 169 A. at 469. *See also In re Estate of Cavalier,* 399 Pa.Super. 637, 582 A.2d 1125 (1990) (where settlement of estate left no assets for transfer to testamentary trust, trust never came into existence), *appeal denied,* 528 Pa. 606, 596 A.2d 153 (1991).

Therefore, the fact that Husband served as both executor and trustee did not relieve him of the obligation to carry out the separate duties of each role, including the duty of a trustee to receive and administer the trust property. To hold otherwise would, as Ap-

---

**3.** A broad grant of authority does not leave a fiduciary subject to no standard whatsoever. *See Estate of Knipp,* 489 Pa. 509, 414 A.2d 1007 (1980) (where testator vests fiduciary with discretion to retain assets, fiduciary is not thereby excused from duty of making retention decisions prudently); *Abarbanel v. Weber,* 340 Pa.Super. 473, 490 A.2d 877 (1985) (where guardianship agreement gave trustee "sole discretion" in man-

aging account, court should not interfere absent abuse of such discretion); *McCredy, supra* (although testator directed trustee to make investment decisions in accordance with trustee's own "investment philosophy," such direction did not leave trustee subject to no standard at all; if trustee, through neglect or carelessness, had made decisions "willy-nilly," he would not have met standard prescribed by testator).

pellee suggests, "allow the Executor to completely ignore his duties and responsibilities as an executor under the [Probate] Code and give him the benefit of the less restrictive standard for the investment of trust assets." Such a result would be untenable.

Accordingly, we agree with Appellee that because "the Estate was never administered and settled . . . , the assets which [Wife] died seized of remained assets of the Estate and did not become property of the testamentary trust." That being the case, Husband did not act as a trustee, and thus Appellant's first and second issues do not entitle him to relief.

■ In his third issue, Appellant contends that Appellee failed to establish "the elements of her case-in-chief," namely, the value of certain assets of Wife's estate at the time of Wife's death and a subsequent decrease in the value of those assets as the result of Husband's mismanagement. The assets in question were listed as follows in the first and partial account filed by Appellant:

### RECEIPTS OF PRINCIPAL

Accounts of Trust upon death of [Wife] on 11/7/82:

| | | AMOUNT |
|---|---|---|
| 1. | American Property Investors VI Limited Partnership, 50 Units (Exhibit "A") estimated | $20,200.00 * |
| 2. | American Property Investors X Limited Partnership, 56 Units (Exhibit "B") estimated | $28,000.00 * |
| 3. | The Brethren's Home of Greenville[,] Ohio, Series II Bond # BR0184 (Ex. "K") | $ 6,825.35 |
| 4. | 1972 Ford Sedan– VIN# A24350956 | $ 400.00 |
| | | $55,425.35 |

* NOTE: Estimation based upon list of "Current Accounts" dated 8/27/82 found among [Husband's] papers (Exhibit "C"). Accountant makes no representation of the accuracy of those amounts. Mailed requests for information to the partnership or its successor and [they] were returned undeliverable (Exhibit "D–1" and "D–2").

The trial court accepted the estimated values listed above as "the principal available for investment as of the date of [Wife's] death . . . ." Appellant contends that the trial court erred in doing so, since Appellant's expert had testified that at the time of Wife's death there existed no ready market for the Partnership holdings and the Brethren's Home bond, and Wife's expert testified that he was unable to offer an opinion as to the market value, if any, of those assets.

■ Although Appellant argues that the burden was on Appellee to prove an abuse of Husband's discretion as trustee, it follows from our resolution of Appellant's first and second issues that the appropriate burden of proof is that which applies to Husband's performance as executor. It is settled law that a party who seeks to impose a surcharge against an executor for mismanagement of an estate bears the burden of proving such mismanagement. *Ellis, supra; Lohm, supra; Maurice, supra; Geniviva, supra.* "However, where a patent error has occurred, the burden of going forward with evidence demonstrating prudent management is on the executor." *Ellis,* 460 Pa. at 285, 333 A.2d at 730. Examples of such patent errors have included the overpayment of taxes (*Lohm, supra; Maurice, supra* ), the failure to make timely payment of taxes (*Geniviva* ), and the incurring of unnecessary real estate commissions (*Ellis* ).

We can conceive of no more patent error on the part of an executor than, in the trial court's words, "[the failure] to take any steps to comply with the formal requirements of probate." Of special importance to the present issue is Husband's failure to comply with Sections 3301(a) and 3302 of the Probate Act, which read in pertinent part as follows:

(a) **General assets.**—Within three months after his appointment, every personal representative shall file with the register an inventory, verified by his affidavit, of all real and personal estate of the decedent, except real estate outside of the Commonwealth. . . .

20 Pa.C.S.A. 3301(a).[4]

> The personal representative shall determine and state in figures opposite each item of the inventory its fair value as of the date of the decedent's death.

20 Pa.C.S.A. 3302. As the trial court notes, Husband's failure to comply with these statutory requirements "effectively prevented any interested party from filing objections and requesting an appraisement.... [A]s a consequence of this omission, determining the value of the estate's assets as of the date of death is very difficult at this time."

Given this patent error, the burden shifts to Appellant to provide evidence of Husband's prudent management. Appellant has not done so. As but one example, we note that in August of 1987, Husband sold the Partnership holdings and bought 3,023 shares of Prudential–Bache High Yield Fund, a fund which invested in junk bonds. As Appellant acknowledges, however, the Probate Code restricts the investment of estate assets to "certain governmental obligations and savings accounts[,]" a category which does not include shares in such a fund. This and much other evidence of record demonstrates that Husband's management of the estate was far from prudent. Accordingly, this issue is without merit.

■ Next, Appellant argues that the trial court erred in allowing Appellee to testify in violation of the Dead Man's Act, 42 Pa.C.S.A. 5930. Appellant has failed to cite any case law in support of his argument, however, and therefore we will not consider the issue further. *See Commonwealth v. Genovese*, 450 Pa.Super. 105, 675 A.2d 331 (1996) (Superior Court need not reach merits of bald assertion unsupported by any citation to authority).

Finally, Appellant contends that Appellee acquiesced in Husband's actions, "thereby completely barring herself from bringing an action for surcharge." Having reviewed the

pertinent portions of the record, we conclude that this issue is without merit.

Order affirmed.

SCHILLER, J., concurs in the result.

---

4. Section 3301, including the time limit, was amended in 1984. Since Wife died in 1982, the pre-amendment version of the statute applied to Husband's administration of her estate.