J-A02014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ESTATE OF LEONA E. FORD, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  ALVIN MILLER, P.O.A./ EXECUTOR | : : : : : : | |
| | : | No. 1060 WDA 2017 |

Appeal from the Order Entered June 23, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  3933 of 2015 (P.O.A.)

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    FILED SEPTEMBER 25, 2018

Alvin Miller appeals pro se from the order removing him as the executor of the Estate of Leona E. Ford ("the Estate"), and sustaining the objections filed by petitioners Diane Miller Gustavson and Elizabeth Mowry[1] to Appellant's Amended First and Final Accounts.[2]  We affirm.

In April 2012, Ms. Ford (hereinafter "Decedent") executed a power of attorney ("POA") naming her grandson, Appellant, as her agent.  Decedent

_____

[1] Decedent's daughter, Joyce Ford, joined in the petitions.  However, she withdrew her participation from these proceedings.

[2] The order in question is appealable as of right.  See Pa.R.A.P. 342(a)(5) ("An appeal may be taken as of right from the following orders of the [o]rphans' [c]ourt Division: . . . [a]n order determining the status of fiduciaries . . . in an estate [.]"); see also In re Estate of Andrews, 92 A.3d 1226, 1228 n.1 (Pa.Super. 2014).

was thereafter placed in a nursing home. At that time, Decedent owned two properties: her main residence in Allegheny County, appraised at $75,700, and a vacation home in Somerset County, appraised at $65,200. In April 2015, Appellant, acting under the POA, agreed to sell both properties to Gerald Yurkov, whom he knew because of their common business in the plumbing industry. Appellant sold Yurkov the Allegheny County property for $21,000 and the Somerset County property for $24,000. The sale prices for the properties were determined based upon what Yurkov could afford. Yurkov paid no closing costs for either purchase.

Decedent died on May 3, 2015, and the property transfers occurred shortly after her death. Appellant did not tell the beneficiaries of the Estate that the sales of the properties were pending at the time of Decedent's death. On May 26, 2015, Decedent's will was probated, naming Appellant as executor. Decedent's daughters, Ms. Gustavson and Joyce Ford, along with Decedent's granddaughter, Ms. Mowry, filed petitions seeking to set aside the sales of the properties, and requesting an accounting from Appellant. Ultimately, Ms. Gustavson and Ms. Mowry were able to purchase the properties back from Yurkov for the amounts he paid, plus attorney's fees. The Allegheny County property was then sold to an arms-length purchaser for $43,000.

The parties conducted discovery. At his February 2015 deposition, Appellant indicated that he was not charging a fee for his services as

Decedent's agent acting under the POA. Orphans' Court Order, 6/23/17, at 2. However, following a trial, the orphan's court determined that, "by check [No. 198] dated April 25, 2012, [Appellant] paid himself $15,000 for services as Agent for [Decedent]," and that he "comingled [Decedent's] funds with his own money when he deposited the $15,000 check into his own funds." Id. Appellant filed a First Accounting, as well as Amended First and Final Accounts of his handling of the Estate. The orphan's court found that the accounts "show[ed] payments already made to [Appellant] in the amount of $4,444.25 . . ."[3] Id. The orphan's court further found that "[t]he [I]nheritance [T]ax [R]eturn filed by [Appellant] shows a commission of $20,160 to [Appellant]." Id. The orphan's court additionally determined that "[Appellant] now also claims payment of fees as [POA] for [Decedent] in the amount of $19, 679.43. Id. The orphans' court concluded that Appellant's claimed "fees and commissions total in excess of $44,000." Id.

On June 23, 2017, the orphans' court entered an order removing Appellant as executor and sustaining the objections to his Amended First and Final Accounts based on his handling of the Estate. The court concluded that

_____

[3] Although the orphan's court opinion is somewhat unclear, as will be explained more fully infra, Appellant concedes that, acting under the POA, he wrote check No. 198 in the amount of $15,000 to himself, and deposited the check into his own personal account. Appellant's brief at 15. He claims that, from this account, he thereafter paid himself $4,444.25 for his POA services, and used the remainder of the funds to pay for Decedent's furnishings at the nursing home. Id. at 13

Appellant had comingled Decedent's funds and overcharged the Estate for his services as Decedent's agent, and that the interests of the Estate were likely to be jeopardized by his continuance in office. This timely appeal followed.[4]

Appellant raises the following issues for our review:

1. Whether the [orphans'] court erred in determining [Appellant's] removal as executor was warranted due to his handling of the real estate.

2. Whether the [orphans'] court erred in determining that [Appellant] comingled funds when acting as Agent under [the POA].

3. Whether the [orphans'] court erred in calculating [Appellant's] fees and commissions.

4. Whether the [orphans'] court erred in removing [Appellant] as executor of the estate of [Decedent].

Appellant's brief at 5 (issues reordered for ease of disposition).

Our standard of review of an orphans' court's decision is deferential.

When reviewing a decree entered by the [o]rphans' [c]ourt, this [c]ourt must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of

_____

[4] The orphans' court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

In re Estate of Strahsmeier, 54 A.3d 359, 362-63 (Pa.Super. 2012). An abuse of discretion is not merely an error of judgment. Id. at 363. Rather, discretion is abused if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias or ill will. Id.

Additionally, section 3182 of the Probate, Estates and Fiduciaries Code governs the removal of personal representatives, and provides, in relevant part, as follows:

§ 3182. Grounds for removal.

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

. . . .

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa.C.S. § 3182(1), (5).

"The court . . . on the petition of any party in interest alleging adequate grounds for removal shall, order the personal representative to appear and show cause why he should not be removed, or, when necessary

to protect the rights of creditors or parties in interest, may summarily remove him." 20 Pa.C.S. § 3183.

In his first issue, Appellant contends the orphans' court erred in determining that his removal as executor was warranted due to his handling of the real estate. According to Appellant, "[M]s. Gustavson and [M]s. Mowry attempt to substantiate their breach of fiduciary claim by alleging that they orally offered to purchase the Somerset real estate for $40,000 or $50,000 prior to [Decedent's] death." Appellant's brief at 16. Appellant claims that offers to purchase are generally inadmissible due to their uncertainty and speculative nature. Id. at 16-17. Appellant argues that there were no written offers for the property submitted by Ms. Gustavson and Ms. Mowry, and that the only written agreements were those between Appellant and Yurkov. Id. at 17.

Appellant fails to appreciate the nature of his role as fiduciary to Decedent and the Estate. As agent and executor, Appellant was under a duty to administer Decedent's assets in such a way as to preserve and protect them for distribution to the proper persons. See In re Kurkowski's Estate, 409 A.2d 357, 360-61 (Pa. 1979). In the discharge of this duty, an executor "is regarded as a fiduciary and is held to the highest degree of good faith." Id. at 361. He will be required to exercise the same degree of judgment, skill, care, and diligence that a reasonable or prudent person

would ordinarily exercise in the management of his own affairs. See In re Estate of Campbell, 692 A.2d 1098, 1101-02 (Pa.Super. 1997).

The orphans' court specifically found the following facts. The Allegheny County property was appraised at $75,700, and the Somerset County property was appraised at $65,200. Orphans' Court Order, 6/23/17, at 1. Appellant sold Yurkov the Allegheny County property for $21,000, and the Somerset County property for $24,000, and that the sale prices for the properties were based upon what Yurkov could afford rather than their fair market value. Id. In addition, Yurkov paid no closing costs for either purchase. Id. The orphan's court concluded that Appellant's removal as executor is warranted based on his handling of Decedent's real estate. Id. at 2.

The record supports the orphans' court's findings that Appellant, in derogation of his duties as executor of the Estate, sold two parcels of real property owned by the Estate for less than half of their appraised values. As removal of an executor is appropriate under section 3182(1) when he "is wasting or mismanaging the estate," the orphans' court's decision to remove Appellant "due to his handling of the real estate in this matter" is amply supported by the record. Accordingly, Appellant's first issue warrants no relief.

In his second issue, Appellant contends the orphans' court erred in determining that he comingled funds when acting as agent under the POA.

According to Appellant, in 2012, upon the advice of his counsel, he wrote check No. 198 in the amount of $15,000 to himself and deposited it in a "newly[-]established account in his own name." Appellant's brief at 15. He claims that the money was to be used to fund Decedent's funeral expenses in the event that she did not survive an upcoming hip surgery. Id. According to Appellant, "he later came to realize that he should have opened the account in the name of Decedent." Id. He argues that he used those funds "to pay for Decedent's needs" and "to reimburse himself for funds expended acting as [a]gent under POA." Id.

As Executor, Appellant had a duty to see that his purely private interests were not advanced at the expense of the Estate. See In re Pitone's Estate, 413 A.2d 1012, 1015 (Pa. 1980). The orphans' court determined that Appellant comingled Decedent's funds with his own money when he deposited the $15,000 check into his own personal account. Orphans' Court Opinion, 6/23/17, at 2. Appellant concedes that he deposited Decedent's funds into his own personal account, and that he should not have done so. Appellant's brief at 15. As the orphans' court's determination that Appellant improperly comingled Decedent's funds with his own is supported by the record, his second claim warrants no relief.

In his third issue, Appellant contends that the orphans' court incorrectly calculated the amount of money he dispersed to himself. He claims that, although he wrote check No. 198 in the amount of $15,000 to

himself and deposited it in his own personal account, those funds were used to pay himself for POA services rendered and for Decedent's necessities. Appellant claims that he paid himself for his POA services $4,444.25 from the $15,000, and that the balance of that account was used to pay for Decedent's furnishings at the nursing home. Appellant argues that his counsel did not advise him that it was necessary to obtain a separate contract to charge POA fees. He further claims that, when he visited Decedent, he felt it was a POA service and that he could charge for the time. He believed that $20 per hour was a reasonable fee to charge for his POA services. Finally, Appellant argues that, although he claimed an executor's fee of $20,160 on the Inheritance Tax Return, he never received the commission.

The findings of an orphans' court judge who heard the testimony of witnesses are to be given the same weight as a jury verdict, particularly when those findings are based on determinations of credibility. In re Estate of Campbell, 692 A.2d 1098, 1101 (Pa.Super. 1997). The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion. Id.

Here, the orphans' court was presented with Appellant's First Accounting, in which he did not seek fees for his services, and in which he did not disclose that he had written the $15,000 check to himself. Instead,

he described the $15,000 check as one of the "Unknown Origin Checks Written by Leona E. Ford" "prior to [Appellant's] administration." First Accounting, 11/5/15, at unnumbered 15. Appellant now concedes that he did, in fact, write and deposit the $15,000 check into his personal account. Appellant's brief at 13. He also concedes that he paid himself $4,444.25 for his services as POA. Id. Appellant prepared a petition for adjudication/proposed distribution in which he claimed fees in the amount of $19,649.73. Orphans' Court Opinion, 6/23/17, at 2. Finally, Appellant concedes that he also filed an Inheritance Tax Return in which he claimed a commission of $20,160. Id. at 14. Based on this record, Appellant paid himself $4,444.25 for his services as POA, and claimed fees in the amount of $19,649.73 and a commission of $20,160 for a total of $44,250.98. Accordingly, we find no error in the orphan's court's determination that Appellant seeks fees and commissions in excess of $44,000. Thus, his third issue warrants no relief.

In his final issue, Appellant contends that there was no evidence to support his removal as executor under section 3182. Instead, he claims that the evidence merely supports a finding of animosity amongst the parties, which is not a basis for his removal. Appellant argues that at all times relevant hereto, he relied upon the good faith opinion of counsel. Appellant's brief at 11.

The record supports the orphans' court's determination that Appellant wasted and mismanaged the Estate's property and comingled Decedent's funds with his own. Thus, we find no error in the orphans' court's conclusion that his continued involvement as executor would likely jeopardize the Estate. For the reasons expressed above, we affirm the orphans' court's determination that Appellant's removal as executor of the Estate was warranted under section 3182.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/25/2018