J-A03023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: LEWIS FULARE, SR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: JEROME FULARE AND | : | |
| LEWIS FULARE, JR. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 684 WDA 2018 |

Appeal from the Order April 3, 2018
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2015 OC 244

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 29, 2019**

Jerome Fulare and Lewis Fulare, Jr. (collectively "Appellants") appeal from the order entered on April 3, 2018, that denied their petition to surcharge and revoke the power of attorney conferred upon their brother, Thomas J. Fulare ("Thomas"), by their parents, Lewis Fulare, Sr. and Kathryn Fulare ("the parents").  After review, we affirm.

The orphan's court set forth the relevant facts in this matter as follows:

> [Appellants] filed the within Petition to Revoke Power of Attorney on or about July 17, 2015. The Petition to Revoke Power of Attorney also included a request for an accounting. [Thomas, the respondent in the orphans' court proceedings], filed an Answer to the Petition to Revoke Power of Attorney on August 13, 2015. A hearing occurred on September 2, 2015[,] which resulted in an Order addressing the parties' agreement regarding the Request for Accounting. Compliance issues with the request for an accounting resulted in an additional Order of Court on February 19, 2016.

_____

* Retired Senior Judge assigned to the Superior Court.

The Court conducted a telephone status conference with counsel on July 11, 2016. After the telephone conference, the Court entered an Order on July 27, 2016, scheduling an evidentiary hearing in the matter and directing the parties to complete pretrial narratives. [Appellants] filed a Pretrial Narrative on September 19, 2016[,] and [Thomas] filed a Pretrial Narrative on September 9, 2016. The Court conducted evidentiary hearings in this matter on November 15, 2016, March 17, 2017, July 5, 2017 and August 31, 2017. The evidentiary record was also supplemented by a Stipulation of Facts of the Parties dated February 7, 2017. The evidentiary record was closed on August 31, 2017. The Court entered an Order on August 31, 2017[,] directing the parties to file Findings of Fact, Conclusions of Law, and a Brief in Support of their Positions. [Appellants] filed their proposed findings, conclusions and brief on October 26, 2017. [Thomas] filed his proposed findings, conclusions and brief on December 6, 2017. The Court will now proceed to make the following:

FINDINGS OF FACT:

1. Lewis Fulare Sr. and Kathryn Fulare were husband and wife, and they have four (4) children; namely, Carol Owens, Lewis Fulare Jr., Jerome Fulare and Thomas ….

2. Thomas … was appointed by his parents, Lewis Fulare Sr. and Kathryn Fulare as their attorney-in-fact by Power of Attorney dated December 9, 2010.

3. At the time Thomas … was appointed Power of Attorney on December 9, 2010, Lewis Fulare Sr. was 86 years of age and Kathryn Fulare was 82.

4. Lewis Fulare Sr. and Kathryn Fulare resided rent free at a property owned by Thomas … at 203 Short Street, Ramey, Pennsylvania at the time of the signing of the Power of Attorney. While they didn't pay rent, Lewis Fulare Sr. and Kathryn Fulare agreed to be responsible for expenses.

5. Lewis Fulare Sr. is alive and is currently living in Golden Living Center, located in Altoona, Blair County where he began living around October or November of 2013.[1]

6. While the parties to this litigation differ as to the extent of Lewis Fulare Sr.'s competency at the time of his entrance into the Golden Living Center, it appears at a minimum Mr. Fulare's mental faculties were diminishing. Currently, Lewis Fulare Sr., is incompetent to make financial or medical decisions.

7. Kathryn Fulare died on or about November 12, 2013. While the parties disagree as to the extent of Kathryn Fulare's physical and mental fitness prior to her death, there is no credible evidence to suggest that Kathryn Fulare was incompetent to make financial decisions in the relevant time period of this litigation.

8. From December 2010 until present, Lewis Fulare Sr. received monthly payments in the approximate amounts; $3,000.00 from the VA; $1,300.00 from Social Security; [and] $385.00 from a PPG pension.

9. From December 2010 until her death, Kathryn Fulare received a small pension of approximately $50.00 per month and a Social Security check in the approximate sum of $560.00.

10. It was not uncommon for Kathryn Fulare to keep cash at various locations in her home. At times, she would keep substantial amounts of money in cash in her home.

11. Lewis Fulare Sr. and Kathryn Fulare conveyed by deed the real property at 203 Short Street, Ramey, Pennsylvania 16671 to Thomas … approximately fifteen to twenty years ago and Thomas … paid $20,000.00 to his three (3) siblings.

12. Despite the fact that Lewis Fulare Sr. and Kathryn Fulare conveyed the 203 Short Street Ramey, Pennsylvania property to Thomas …, they continued to reside at this residence until approximately October 2013.

13. Thomas … married Michelle Fulare (Smith) on September 16, 2006. They resided in Michelle's home in Ramey, Pennsylvania

_____

[1] Appellants note that Lewis Fulare, Sr. passed away on April 5, 2018.

- 3 -

until they constructed a new home in 2011. Thomas … has two (2) step-children Bailiegh Cannistraci and Barry Kanouff.

14. Prior to his marriage with Michelle, Thomas … lived at 203 Short Street, Ramey, Pennsylvania with his parents.

15. Thomas … is employed at Advance Auto Parts in Tyrone, Pennsylvania. He previously retired from the Pennsylvania Department of Transportation in 2015 after thirty-four and a half (34½) years of service.

16. Lewis Fulare Sr.'s monthly invoice for living at Golden Living Center is and will continue to be paid for by the Veteran's Administration. As Power of Attorney for his Father, Thomas … pays for Lewis Fulare's personal care such as hair care and clothing.

17. Subsequent to the time that Thomas … became his parents' Power of Attorney but prior to his mother's death and his Father's entrance into Golden Living Center, Thomas engaged in various duties on behalf of his parents. Some of these duties included making certain that duties such as snow removal and cutting the grass were completed. He also took care of their medications and arranged for meals to be brought to them. He also retained the services of an aide for three (3) days a week that helped them with their laundry and various other activities.

18. In addition to other activities, Thomas … as Power of Attorney for his parents would also write checks to pay monthly bills for his parents. However, during this period of time, his parents were also writing out their own checks and taking care of some of their own financial affairs. Mr. and Mrs. Fulare would also pay some of their bills with cash.

19. Lewis Fulare Sr. and Kathryn Fulare lived modestly, but they were very generous to their children and their spouses, grandchildren, and step-grandchildren with monetary gifts for birthdays, holidays, graduations, vacations, and other necessities and gifts.

20. Lewis Fulare Sr. and Kathryn Fulare's generosity at times resulted in monetary gifts in substantial amounts. For example, Thomas … received $10,000.00 from his parents in 2011 and

Jerome Fulare's son received $10,000.00 as a gift for his 16th birthday.

21. During the time that Thomas … was Power of Attorney for his parents, he was aware of instances where he or his parents would deposit part of their monthly income checks into the bank and maintain the balance of those checks in cash. These actions resulted in Thomas … being aware of his mother having large sums of cash in the home.

22. During the time that Thomas … was Power of Attorney, he was aware of Lewis and Kathryn Fulare cashing out large sums of money from various investments. These investment accounts included of sums of money from Capital World stock, PPG stock, and Lewis and Kathryn Fulare's Knights of Columbus account.

23. After his mother's death, Thomas … reimbursed his father's checking account the sum of $4,818.41 after it was questioned as to whether or not he should have properly received those funds. Much of these funds were expenditures made by Thomas … for maintenance and utilities for the 203 Short Street, Ramey, Pennsylvania property after his Father had been placed in Golden Living Center. In addition to the above findings of fact, this Court also acknowledges that the extensive testimony revealed numerous bank records which we find credible and reliable. In addition, we also find the report of Young Oakes and Brown as a credible and reliable report which has relevance to this matter.

Orphans' Court Opinion, 4/3/18, at 1-6.

On April 3, 2018, the orphans' court denied Appellants' petition to surcharge and revoke the power of attorney conferred upon Thomas.[2] On May 2, 2018, Appellants filed a timely notice of appeal. Both the orphans' court and Appellants complied with Pa.R.A.P. 1925.

_____

[2] On April 12, 2018, Appellants filed a post-trial motion in the nature of exceptions to the orphans' court's order. This filing was not permitted. **See** Pa.O.C.R. 8.1 ("[N]o exceptions or post-trial motions may be filed to any order or decree of the court.").

On appeal, Appellants present the following issues for this Court's consideration:

A. Whether the lower Court erred or abused its discretion in refusing to impose a surcharge against [Thomas] for his failure as power of attorney to exercise common prudence, skill and caution in the performance of his fiduciary duties and/or violated his duty of care as power of attorney?

B. Whether the lower Court erred or abused its discretion in failing to address in its Opinion and Order the issues raised by Appellants concerning the $7,500.00 gift to Barry Kanouff, transfer of 2012 Envoy and various home improvement and repairs and enter a surcharge against [Thomas]?

Appellants' Brief at 5.[3]

Appellants assert that the orphans' court erred or abused its discretion in refusing to impose a surcharge against Thomas for his failure in the performance of his fiduciary duties.[4] We point out that the party seeking to impose a surcharge bears the burden of proving a surcharge is warranted.

---

[3] In their brief, Appellants have abandoned seeking removal of Thomas as power of attorney because the parents are now deceased, and the issue is moot. On appeal, they challenge only the orphans' court's denial of their petition to surcharge Thomas. Appellants' Brief at 8.

[4] Appellants' issues are interrelated. Although the orphans' court did not specifically mention the 2012 GMC Envoy, it thoroughly considered the parents' course of conduct in providing gifts to their family during their lifetime, including generous gifts to the parties' children and step-children. Orphans' Court Opinion, 4/3/18, at 5. The orphans' court concluded there was insufficient evidence to establish that Thomas engaged in any dispositions that would warrant a surcharge. *Id.* at 10. Accordingly, as did the orphans' court, we address Appellants' issues concurrently.

*Matter of Estate of Campbell*, 692 A.2d 1098, 1104 (Pa. Super. 1997). Our

standard of review is well settled:

> In reviewing the decision of the orphans' court, this Court's responsibility is to assure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence. In determining whether the findings of the orphans' court are supported by competent evidence, we must take as true all the evidence supporting the findings and all reasonable inferences therefrom. Further, all conflicts in testimony must be resolved by the hearing judge, who is the sole arbitrator of credibility. Findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law.

*In re Estate of Plance*, 175 A.3d 249, 259-260 (Pa. 2017).

The orphans' court addressed the surcharge issue as follows:

> After careful consideration of the arguments of the parties and a review of the totality of the extensive record in this case, this Court finds that [Appellants] have failed to prove by a preponderance of the evidence that [Thomas] misappropriated his parents' funds for his own benefit. In addition, we believe the evidence has failed to establish that the funds dispersed were not dispersed by Lewis and Kathryn Fulare with their knowledge and approval. We acknowledge that during the relevant time period in this case, Kathryn Fulare was in her 80's. However, we find no credible evidence to suggest that Kathryn Fulare was incompetent to make financial decisions on her own behalf. Both parties agree that Lewis and Kathryn Fulare were generous with their money. The record supports a conclusion that at times, Lewis and Kathryn Fulare would gift large sums of money to their family. The evidence also established that Lewis and Kathryn Fulare were sometimes present when withdrawals were made from their accounts. In light of the fact that we believe that Kathyrn Fulare was competent to make her own financial decisions and that she would routinely give away sums of money, we find that it would be engaging in speculation to make assumptions about what she did or did not do with her and her husband's money. Even assuming that [Thomas] breached a duty to his parents, we cannot conclude that any breach on his part resulted in any related

> loss to the estate of Kathryn and Lewis Fulare. For this reason, we conclude that [Appellants] have failed to satisfy their burden to establish that a surcharge is warranted. We find [Thomas's] argument convincing that he was not responsible for determining what his parents would do with money that was provided to them.

Orphans' Court Opinion, 4/3/18, at 9-10.

We discern no abuse of discretion or error of law in the orphans' court's findings that the parents were competent to make gifts of their personal property and that the evidence did not establish any breach of fiduciary duty that would warrant a surcharge. Moreover, there was ample evidence establishing that the parents often made generous gifts to their family. *See* N.T. (Thomas's Testimony), 11/15/17, at 44-45; N.T. (Appellant Jerome's Testimony), 7/5/17, at 52, 75; N.T. (Appellant Lewis's Testimony), 8/31/17, at 31-33 (discussing the monetary gifts that their parents made). Pursuant to our standard of review, we must defer to the orphans' court's determinations of credibility. *Plance*, 175 A.3d at 259-260. After our review of the record, we conclude that Appellants have not established that the orphans' court erred or abused its discretion; Appellants failed to meet their burden to warrant a surcharge.

For the reasons set forth above, we conclude that Appellants are entitled to no relief. Accordingly, we affirm the April 3, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/29/2019