J-A08014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ESTATE OF ETHELENE SCOTT HATCHER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: KIMBERLY HATCHER | : | |
| | : | |
| | : | No. 2046 EDA 2024 |

Appeal from the Decree Entered May 6, 2024
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s): 290 DE of 2024

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED JUNE 24, 2025**

Kimberly Hatcher ("Kimberly") appeals from the decree, entered in the Court of Common Pleas of Philadelphia County, Orphans' Court Division, directing her to: (1) vacate the premises owned by the Estate of Ethelene Scott Hatcher, Deceased ("Estate") and deliver possession thereof to David Hollar, Esquire, Administrator of the Estate ("Administrator"), and (2) deliver to Administrator the sum of $27,606.30, representing funds from the Decedent's escheated bank account. After our careful review, we affirm.

The Orphans' Court set forth the factual and procedural history of this case as follows:

On November 30, 2019, Ethelene Scott Hatcher (hereinafter referred to as "Decedent") died intestate. At the time of her passing, the Decedent owned residential property at 823 Hoffman Place, Philadelphia, PA 19123 (hereinafter referred to as "the [P]roperty"). The Decedent was survived by five children, [Kimberly], James Hatcher (hereinafter referred to as "James"),

Benjamin Hatcher (hereinafter referred to as "Benjamin"), Danah Hatcher[,] and Rachel Boyd.

Following the Decedent's death, James filed a petition for citation before the Register of Wills, to which [Kimberly] filed objections[.] On May 18, 2023, the Register of Wills appointed an independent administrator for the Estate, and on June 22, [2023,] Letters of Administration were issued to [Administrator]. [] Administrator filed Certification of Notice under Pa.O.C.R[.] 10.5 on July 6, 2023.

[Kimberly] and Benjamin have been residing at the [P]roperty since the time of Decedent's passing. When [] Administrator ascertained that the [P]roperty was uninsured, he secured an insurance policy and personally advanced the cost of the policy in the amount of $2,452.00. Due to [Kimberly] and Benjamin residing at the property without paying rent, the Estate had no funds to renew the insurance policy.

In an attempt to liquidate the [P]roperty, as it is the sole asset in the Estate, [] Administrator notified [Kimberly] and Benjamin to quit possession on December 13, 2023, via certified mail. The letter stated that the [P]roperty must be liquidated so that the proceeds may be used to discharge the outstanding obligations of the [Estate]. The remainder of the funds from the liquidation would then be distributed to the heirs. The letter asked that either [Kimberly] and/or Benjamin make an offer to purchase the [P]roperty if they wished to remain in the home. This letter was received and signed [for] by Benjamin on December 15, 2023. No offer to purchase the property was ever made.

Prior to the probate proceedings, on April 11, 2023, Santander Bank escheated a balance of $27,606.30 from an account titled to the Decedent to the Pennsylvania Treasury [] pursuant to the Disposition of Abandoned and Unclaimed Property Act. [] Administrator, upon ascertaining the existence of these funds held by the Treasury, forwarded a claim form to [Kimberly] to sign, as it was initially reported that [Kimberly] was a co-owner on the account. Upon receipt of this form, [Kimberly] initiated her own claim and received payment of the funds on August 31, 2023.

On March 11, 2024, [] Administrator filed a petition for citation with the Orphans' Court, directed to [Kimberly] and Benjamin[,] to show cause why the relief requested in the petition for turnover of assets to the Estate and other relief should not be granted. The [Orphans'] Court issued [a] citation on April 8, 2024.

[Kimberly] filed an answer with new matter on April 17, 2024. [Kimberly's] new matter requested that the [Orphans'] Court instruct the Register of Wills to probate an alleged will, and to appoint [Kimberly] as the Executor upon the removal of the current Administrator. On April 22, 2024, [] Administrator replied to this new matter.

The Orphans' Court issued a decree on May 3, 2024[,] ordering [Kimberly] and all other occupants to vacate and deliver possession of [the Property] to [] Administrator within 60 days of the date of the decree, and that [Kimberly] deliver the funds from the Santander Bank account to [] Administrator.

On May 7, 2024, [Kimberly] filed a[ timely notice of] appeal to the Superior Court. [The Orphans'] Court issued a [Pa.R.A.P.] 1925(b) order on May 9, 2024. [Kimberly] filed her [Rule 1925(b) concise] statement of [errors complained of on appeal] on May 22, 2024.

Orphans' Court Opinion, 8/15/24, at 1-3 (unnecessary capitalization omitted).

Kimberly raises the following claims for our review:

1. Did the Orphans' Court [] err in granting Administrator['s] petition for citation, where the [Orphans' Court] failed to afford [Hatcher] a hearing or make any determinations of fact to support its [decree] dispossessing [Hatcher] of the Estate's real property, in contravention of 20 Pa.C.S.A § 3311(a)[?]

2. Did the Orphans' Court [] err in granting the petition for citation in contravention of [section] 3311(a), effectively dispossessing [Hatcher] of the Estate's real property, when [Kimberly] is an heir of [D]ecedent who occupied the real estate at the time of [D]ecedent's death with the consent of [D]ecedent?

3. Did the Orphans' Court [] err in granting the petition for citation without making a factual inquiry and resolving genuine issues of material fact[] regarding the owner of the money[] escheated to [the] Pennsylvania Treasury Bureau of Unclaimed Property by Santander Bank?

4. Did the Orphans' Court [] err and/or was there an abuse of discretion in failing to address any of the issues surrounding the probate of the will?

- 3 -

> 5. Did the Orphans' Court [] err in failing to address the issue of the appointment of the independent administrator?

Brief of Appellant, at 12-13 (reordered for ease of disposition; unnecessary capitalization omitted).[1]

Our standard of review of a decree entered by an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. *In re Estate of Walter*, 191 A.3d 873, 878 (Pa. Super. 2018). Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. *In re Estate of Geniviva*, 675 A.2d 306, 310 (Pa. Super. 1996). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." *Horner v. Horner*, 719 A.2d 1101, 1103 (Pa. Super. 1998).

Kimberly's first two claims involve the court's order directing her to vacate the Property and deliver possession to the Administrator. Kimberly argues that the court erred by failing to afford her a hearing or make any

_____

[1] In the argument section of her brief, Kimberly raises an additional claim that the Orphans' Court erred "by not taking into consideration the mental capacity of all the heirs." Brief of Appellant, at 41. This claim was not included in the statement of questions involved and is, therefore, waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

determinations of fact. *See* Brief of Appellant, at 18. She asserts that "there was no litigation, testimony, or evidence to prove that [A]dministrator was unable to proceed with the administration of the house in which three out of the five heirs live." *Id.* at 27. Kimberly is entitled to no relief.

A personal representative bears the responsibility to "preserve and protect the property for distribution to the proper persons within a reasonable time." *In re Estate of Campbell*, 692 A.2d 1098, 1101 (Pa. Super. 1997). In the performance of his fiduciary duties, the personal representative must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *Id.* at 1101–02.

Section 3311(a) of the Probate, Estates, and Fiduciaries ("PEF") Code provides as follows:

> (a) Personal representative.--**A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent**. He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. **The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or other parties**. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S.A. § 3311(a) (emphasis added). Section 3311(a) contains no requirement that the court conduct a hearing before directing a personal representative to take possession of a property occupied by an heir with consent of the decedent.

Here, Attorney Hollar was appointed administrator on June 22, 2023, and filed his petition for turnover of assets on March 11, 2024, after attempting to resolve the matter with the heirs without court intervention. In his petition, Administrator averred that: (1) five years had elapsed since Decedent's death, *see* Petition for Turnover of Assets, 3/11/24, at ¶ 6; (2) the Estate had incurred past-due real estate tax obligations in the then-current amount of $7,265.62, *id.* at ¶ 7 and Exhibit C; (3) Administrator advanced the sum of $2,452.00 for insurance on the previously uninsured Property, *id.* at ¶ 8 and Exhibit D; (4) the Estate lacked liquid funds to maintain property insurance coverage or satisfy its inheritance tax obligations, *id.* at ¶¶ 8-9; and (5) Administrator offered to sell the Property to the heirs, but none made a purchase offer. *Id.* at ¶ 10 and Exhibit E. In light of the foregoing, it is clear that a sale of the Property was "necessary to protect the rights of claimants or other parties." 20 Pa.C.S.A. § 3311(a). Accordingly, the Orphans' Court did not err in directing Kimberly and the other heirs to vacate the Property and awarding possession thereof to the Administrator.

Kimberly next asserts that the Orphans' Court erred by failing to make a factual inquiry and resolve genuine issues of material fact regarding the rightful owner of the funds escheated to the Bureau of Unclaimed Property by

Santander Bank.[2]  Specifically, Kimberly disputes the Orphans' Court's reasoning that "if [Kimberly] held the bank account jointly with the Decedent, then at the Decedent's passing, the money would not have gone to the Commonwealth . . . but rather would have remained in the account as [Kimberly's] sole property."  Orphans' Court Opinion, at 9, citing 20 Pa.C.S.A. § 6304(a) ("[a]ny sum remaining on deposit at the death of a party to a joint account belongs to the surviving party . . . as against the estate of the decedent").  Kimberly notes that property held by a bank will escheat after three years of dormancy.  **See** 72 P.S. § 1301.3.  Thus, "if [Kimberly] was on the account and[,] unbeknownst to the bank[, Decedent] passed in 2018, and the monies in the account remained untouched for 3 years, . . . then the money would have been sent to the [Commonwealth]."  Brief of Appellant, at 29-30.  While we agree with Kimberly that the reasoning of the Orphans' Court is faulty,[3] we nevertheless conclude that she is entitled to no relief.

Here, Administrator attached to his petition a statement from Santander Bank for the period March 20, 2023, through April 19, 2023, showing Decedent as the sole account owner and reflecting that, on April 11, 2023, the

_____

[2] In her argument on this claim, Kimberly asserts that Santander Bank should have been joined as an indispensable party.  However, this claim is not raised in Kimberly's statement of questions involved and, accordingly, is waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[3] We may affirm on any basis apparent from the record, even those not considered by the trial court or raised by the parties.  **In re T.P.**, 78 A.3d 1166, 1170 (Pa. Super. 2013).

funds in the account, totaling $27,606.30, were escheated to the state. *See* Petition to Turn Over Assets, 3/11/24, at Exhibit F. In transmitting the funds to the Commonwealth, Santander mistakenly identified the account as jointly owned by Decedent and Kimberly. *See id.* at Exhibit G. However, Administrator subsequently confirmed with a representative of Santander that Kimberly was removed from the account on December 27, 2012, and, since that time, Decedent had been the sole owner of the account. *See id.* at Exhibit I. Accordingly, the proceeds of the Santander account are the property of the Estate, and the Orphans' Court did not err in directing Kimberly to turn the funds over to the Administrator.

Kimberly next claims that the Orphans' Court erred and/or abused its discretion in failing to address any of issues surrounding the probate of the Decedent's purported will. Specifically, Kimberly attached to her new matter a note, purportedly handwritten by Decedent, stating: "I Ethelene Hatcher would like to in event of when I pass to leave the house in Kimberly Hatcher's name." Answer and New Matter, 4/17/24, at Exhibit 4. Kimberly claims that "the new matter should have been treated as an appeal [from probate] as the complaint was filed within the initial petition timeframe for an appeal of a decree and the answer was filed accordingly." Brief of Appellant, at 33. She is entitled to no relief.

The Register of Wills has jurisdiction over the probate of a will. *See* 20 Pa.C.S.A. § 901. When a party seeks to challenge the probate of a will "or is otherwise aggrieved by a decree of the register," the party may appeal the

Register of Wills' decision to the Orphans' Court within a specified time. 20 Pa.C.S.A. § 908(a).

Here, there is nothing in the record to suggest that Kimberly ever attempted to probate the Decedent's handwritten note as a will. Thus, there can be no appealable decree of the Register by which Kimberly could possibly be aggrieved. ***See id.*** Moreover, even if such a decree had been issued by the Register, the Orphans' Court would have properly declined to consider Kimberly's "appeal" where the issue was raised in new matter to an unrelated petition for the turnover of assets. ***See*** Pa.R.O.C.P. 10.4 ("Appeals to the court from an order or decree of the Register **shall be by petition** and governed by Chapter III of [the Orphans' Court] Rules [relating to petition practice and pleading] and any applicable local rules.") (emphasis added). Accordingly, Kimberly is entitled to no relief.

Finally, Kimberly claims that the Orphans' Court erred in failing to address the appointment of Attorney Hollar as independent administrator. As with her previous claim regarding the probate of handwritten notes, Kimberly raised the matter of removal of Attorney Hollar as administrator in her new matter filed in response to the petition for turnover of assets. Kimberly argues that

> [t]he Register of Wills habitually appoints an independent administrator when there is a dispute within the family. Unfortunately, it seems to be predatory in nature. The administrators are typically chosen over family members, and the result . . . usually means the end of the possibility to ret[]ain a family home.

Brief of Appellant, at 40.  Once again, her claim merits no relief.

Section 3155(b) of the PEF Code provides, in relevant part, as follows:

(b) Letters of administration.--Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) **Other fit persons**.

20 Pa.C.S.A. § 3155(b).

Pursuant to section 3181(a) of the PEF Code, "the register may revoke letters of administration granted by him whenever it appears that the person to whom the letters were granted is not entitled thereto."  *Id.* at § 3181(a). The Orphans' Court possesses exclusive jurisdiction to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

. . .

(3) has become incapacitated to discharge the duties of his office because of sickness or physical or mental incapacity and his incapacity is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or additional security as the court shall direct; or

- 10 -

(4.1) has been charged with voluntary manslaughter or homicide, except homicide by vehicle, as set forth in sections 3155 (relating to persons entitled) and 3156 (relating to persons not qualified), provided that the removal shall not occur on these grounds if the charge has been dismissed, withdrawn or terminated by a verdict of not guilty; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

*Id.* at § 3182.

Here, given the disagreement between James and Kimberly as to whom should administer the estate, the Register of Wills was within its statutory authority under section 3155(b) in determining that the appointment of an independent administrator would best serve the interests of the estate. Kimberly has filed neither an appeal from the Register's decision under section 908(a), nor a petition to revoke the letters under section 3181(a). Moreover, Kimberly has advanced no claim that Attorney Hollar is wasting, mismanaging, or jeopardizing the estate in any way, such as would warrant removal by the court under section 3182. Accordingly, she is entitled to no relief.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025

- 11 -